638 A.2d 1301

THE CHASE MANHATTAN BANK, A NATIONAL ASSOCIATION, PLAINTIFF-RESPONDENT, v. MR. AND MRS. SEYMOUR JO-SEPHSON, SHERRI BAGNELL AND ROBERT HANSELMANN, DEFENDANTS-APPELLANTS, AND SAUL WERNER AND GRACE WERNER, MATTHEW STEINFELD, KIM CAGLIARI, CORRINE MCLAUGHLIN, AND ALEX CAPRIO, DEFEN-DANTS.

Argued October 13, 1993—Decided April 13, 1994.

*Susan R. Oxford,* Assistant Deputy Public Defender, argued the cause for appellants (*Zulima V. Farber,* Public Advocate, attorney).

*Kenneth D. McPherson, Jr.,* argued the cause for respondent (*Waters, McPherson, McNeill,* attorneys; *Mr. McPherson* and *Gregory J. Castano,* of counsel; *Robert J. Donaher,* on the brief).

*Melville D. Miller, Jr.,* argued the cause for *amicus curiae* Legal Services of New Jersey. (*Mr. Miller,* attorney; *Mr. Miller* and *Stephen St. Hilaire,* on the brief).

*Dennis R. Casale* argued the cause for *amicus curiae* New Jersey Bankers Association (*Jamieson, Moore, Peskin & Spicer,* attorneys).

*Gregory C. Diebold* submitted a brief on behalf of *amicus curiae* Hudson County Legal Services (*Timothy K. Madden,* Director, attorney).

*Judith Trachtenberg* submitted a letter brief on behalf of *amicus curiae* Non–Profit Affordable Housing Network of New Jersey, Inc.

The opinion of the Court was delivered by

STEIN, J.

The issue presented by this appeal is whether the Anti–Eviction Act ("Act"), *N.J.S.A.* 2A:18–61.1 to –61.12, as amended by *L.*1986, *c.* 138, protects tenants from eviction by foreclosing mortgagees unable to establish any of the statutory grounds for which eviction is authorized. See *N.J.S.A.* 2A:18–61.1. More specifically, we consider whether the 1986 amendment to *N.J.S.A.* 2A:18–61.3, which extended the Act's anti-eviction restrictions to "an owner's or landlord's successors in possession or ownership," superseded this Court's decision in *Guttenberg Savings & Loan Ass'n v. Rivera,* 85 *N.J.* 617, 428 *A.*2d 1289 (1981), in which we held that the Anti–Eviction Act did not protect tenants from eviction by a foreclosing mortgagee.

Appellants are tenants against whom the Chancery Division entered an order for possession in favor of Chase Manhattan Bank ("Chase"), the mortgagee foreclosing on the property that the tenants occupy. They contend that the amended Anti–Eviction Act prohibited the court from entering an order for possession for Chase absent a showing of statutory good cause. Chase responds that the 1986 amendments to the Act should not be construed to overrule the holding in *Guttenberg*. It asserts that the Legislature, had it intended to overrule our decision in *Guttenberg*, would have expressed its intention to do so in more explicit language.

The Appellate Division agreed with Chase's contention and affirmed the Chancery Division. 261 *N.J.Super.* 428, 619 *A*.2d 241 (1993). The court determined that if the Legislature had intended to amend the statute to overturn the decision in *Guttenberg*, that purpose would have been clearly expressed in the statutory language and reflected in the legislative history. Absent such expression, the court concluded, *Guttenberg*'s interpretation of the Anti–Eviction Act survived the 1986 amendments and, therefore, the Act did not diminish a court's authority to enter an order of possession for a foreclosing mortgagee resulting in the eviction of tenants from the mortgaged property.

We granted the tenants' petition for certification, 133 *N.J.* 439, 627 *A*.2d 1144 (1993). Although the parties have resolved the underlying dispute, we elect to consider and decide the questions presented because of their public importance.[1] *See In re J.I.S.*

---

[1] The Appellate Division decided this appeal together with the appeal in *Maryland National Mortgage Corp. v. Littlejohn*, 261 *N.J.Super.* 428, 619 *A*.2d 241 (1993). We granted certification in *Littlejohn*, 133 *N.J.* 439, 627 *A*.2d 1144 (1993), and heard oral argument. Before argument, defendant's counsel notified the Court that defendant had voluntarily moved from the premises. We have dismissed the *Littlejohn* appeal as moot because the principal issue raised in that appeal has been resolved by our decision in *Chase Manhattan Bank v. Josephson*. We note that the subsidiary issue raised in *Littlejohn* regarding the filing of a lis pendens by the mortgagee does not affect our decision regarding application of the Anti–Eviction Act to foreclosing mortgagees. Furthermore, to the extent that *Littlejohn* raises the concern that the collateral value of single-family homes will

*Indus. Serv. Co. Landfill,* 110 *N.J.* 101, 104–05, 539 *A.*2d 1197 (1988).

## I

A summary of the facts underlying the litigation will provide a context for resolution of the issues. In April 1973, defendants Marion and Seymour Josephson, a married couple, moved into a single-family home in West Orange that was located on property owned by the Carteret School for Boys. The Josephsons had entered into a one-year written lease, which they had renewed annually until 1978, after which they continued their tenancy pursuant to an oral agreement to pay the same rent on a month-to-month basis.

In 1987, the Carteret School for Boys sold the property, including the Josephsons' residence, to Saul and Grace Werner. The Werners financed the purchase in part with a loan from Chase Manhattan Bank, secured by a mortgage and an assignment of rents and leases. The deed and mortgage contained a standard clause providing that the mortgagee would be entitled to possession on default by the mortgagor.

The Werners subsequently defaulted on the loan, and Chase filed a complaint in June 1990 to foreclose the mortgage. In March 1991 the Werners settled with Chase by conveying a deed for the property in lieu of foreclosure. Thus, Chase obtained not only the possessory interest to which it had been entitled on the Werners' default, but also became the owner of the property by virtue of the deed from the Werners.

Because the three single-family homes on the property were occupied by tenants paying from $550 to $560 monthly, rents described by Chase as far below fair market value, Chase obtained

---

be impaired by tenancies protected by the Anti–Eviction Act, we observe that an owner's intent to personally occupy premises or to sell premises to purchasers who intend to personally occupy them are authorized grounds for eviction under the Act. *See N.J.S.A.* 2A:18–61.1*l* (3).

leave to amend its complaint to add the tenants as defendants so that it could evict them and obtain exclusive possession of the property. In its complaint, Chase asserted that it had taken its mortgage on the property subject to no encumbrances. The Josephsons failed to answer the complaint and requested only that Chase afford them additional time within which to secure adequate alternative housing. Chase agreed and, instead of seeking a default judgment and order for eviction, moved for summary judgment and permitted the Josephsons to remain in their home rent-free pending their relocation.

Approximately one month later, in January 1992, the Chancery Division granted Chase's motion for summary judgment. Chase continued to forbear in collecting rental income from the Josephsons and permitted them additional time to relocate. Subsequently, in February 1992, the Public Advocate, acting on behalf of the Josephsons and other defendants, filed a motion in the Chancery Division seeking reconsideration of its judgment pursuant to *Rule* 4:49–2 or, alternatively, relief from its judgment under *Rule* 4:50–1(f). (Chase's complaint originally sought the eviction of other tenants as well as the Josephsons. The Appellate Division dismissed the appeal with regard to those other tenants because they had voluntarily surrendered possession of the premises. 261 *N.J.Super.* at 433, 619 *A.*2d 241.) The Public Advocate argued that the 1986 amendments to the Act made its provisions applicable to evictions by foreclosing mortgagees. Alternatively, the Public Advocate maintained that the Court's holding in *Guttenberg, supra,* 85 *N.J.* 617, 428 *A.*2d 1289, exempted foreclosing mortgagees from the Act only with respect to tenancies that had commenced subsequent to the mortgage and that because the Josephsons' tenancy predated the execution of the mortgage, the Act protected them from eviction.

The court denied the Josephsons' motion, finding first that the fact that their oral month-to-month tenancy predated the mortgage did not exempt them from our holding in *Guttenberg,* and also that the 1986 amendments to the Act were not sufficiently

specific to supersede *Guttenberg*'s exclusion of foreclosing mort-
gagees. However, the court stayed execution of the judgment for
possession pending appeal and the Josephsons' payment to Chase
of both the past rent that Chase had excused and their continuing
rental obligations. The Josephsons tendered the rental payments
to Chase with assistance from the Homelessness Prevention Pro-
gram of the Department of Community Affairs.

Affirming the judgment of the Chancery Division, the Appellate
Division first determined that *Guttenberg* did not afford an exemp-
tion under the Act to tenants without a lease whose possession
predated the mortgage. 261 *N.J.Super.* at 433–35, 619 *A.*2d 241.
The court recognized, however, that if the 1986 amendments
superseded *Guttenberg* and applied the Act to mortgagees, the
distinction between a tenancy and a leasehold would be irrelevant
because the Act would protect tenants holding possession under
either interest. *Id.* at 435, 619 *A.*2d 241. The court concluded,
however, that the Josephsons were not protected because the
language amending the Act, although broad enough to encompass
foreclosing mortgagees, was not sufficiently precise in its refer-
ence to mortgagees to support a finding that the Legislature
intended to overturn *Guttenberg.* *Id.* at 437–40, 619 *A.*2d 241.

## II

A review of the law regarding the respective rights of mortgag-
ees and tenants informs our consideration of the Anti–Eviction
Act's application to foreclosing mortgagees. That review encom-
passes the common law prior to the Act, the changes effected by
the Act, interpretation of the Act by this Court in *Guttenberg,* and
the amendment of the Act in 1986.

## A

The common law in New Jersey holds that a mortgagee
is entitled to possession of mortgaged premises on default of the
loan secured by the mortgage. *See Guttenberg, supra,* 85 *N.J.* at
626, 428 *A.*2d 1289 (citing *Dorman v. Fisher,* 31 *N.J.* 13, 14, 155

*A*.2d 11 (1959), and *Shields v. Lozear*, 34 *N.J.L.* 496 (E. & A.1869)). Except for that common-law entitlement, New Jersey follows a "lien" as opposed to a "title" theory of mortgages. Execution of the mortgage does not convey to the mortgagee title that is defeasible on payment of the secured debt, but rather confers on the mortgagee a lien on the property that secures the debt. *See Sears, Roebuck & Co. v. Camp*, 124 *N.J.Eq.* 403, 408, 1 *A*.2d 425 (E. & A.1938); 29 *New Jersey Practice, Law of Mortgages* § 4, at 21 (Roger A. Cunningham & Saul Tischler) (1975) (hereinafter *New Jersey Practice* ). Thus, on default, the mortgagee has only a possessory interest, and ownership of the premises remains subject to the mortgagor's equity of redemption. *See Dorman, supra*, 31 *N.J.* at 14, 155 *A*.2d 11 (stating that mortgagee is entitled to possession without first barring mortgagor's equity of redemption). In order to terminate the mortgagor's equity of redemption, the mortgagee must bring an action to foreclose the mortgage, *N.J.S.A.* 2A:50–2, obtain a writ of execution for sale of the mortgaged property, *N.J.S.A.* 2A:50–36, and sell the property on foreclosure, *N.J.S.A.* 2A:50–37. *See Carteret Sav. & Loan Ass'n v. Davis*, 105 *N.J.* 344, 347–48, 521 *A*.2d 831 (1987). The foreclosing mortgagee obtains an ownership interest in the property only when the mortgagee purchases the property at the foreclosure sale. *See Guttenberg, supra*, 85 *N.J.* at 630, 428 *A*.2d 1289.

The scope of the possessory and ownership interests obtained by the foreclosing mortgagee is determined by the mortgagor's interests at the time the mortgage was executed. *See Sears, Roebuck, supra*, 124 *N.J.Eq.* at 410, 1 *A*.2d 425. Thus, at common law, the mortgagee's possessory and ownership interests were encumbered by tenancies only to the extent that the mortgagor's interests were so encumbered at the time of the mortgage.

At common law, the terms of the tenancy controlled the right of the owner or landlord to eject the tenant, whether that tenancy was a term of years or a periodic tenancy. Once the tenancy expired and the tenant received proper notice, the tenant's right

to possession terminated and the landlord or owner of the property could eject the tenant who attempted to hold over. See Cornelius J. Moynihan, *Introduction to the Law of Real Property* ch. 3, § 7 (2d ed. 1988) (hereinafter Moynihan).

That general principle was reflected in *N.J.S.A.* 2A:18–53a, which, prior to passage of the Anti–Eviction Act in 1974, established a summary action for possession that could be brought to remove a tenant who held over and continued in possession of premises after the expiration of the tenant's term. Therefore, if the mortgagor's interest in the property was subject to a tenancy at the time the mortgage was executed, the foreclosing mortgagee could eject the tenant at the termination of the tenancy. *Guttenberg, supra,* 85 *N.J.* at 626–27, 428 *A.*2d 1289.

## B

The Anti–Eviction Act, *L.*1974, *c.* 49, dramatically changed the rights of landlords and owners by prohibiting the ejectment of residential tenants or lessees simply because their tenancies or leases had expired. See Moynihan, *supra,* at 88 n.1 (noting New Jersey statutory exception to common-law rule that tenant's right to occupancy ends with lapse of tenancy term). The Act provided in *N.J.S.A.* 2A:18–61.3 that residential tenants no longer could be evicted on termination of their tenancies unless the landlord established good cause for eviction. Good cause included various breaches of tenant responsibilities, such as failure to pay rent and disorderly behavior, see *N.J.S.A.* 2A:18–61.1.a to –61.1.f, –61.1.n to –61.1.p, as well as grounds based on owner circumstances, such as removal of property from residential use and conversion of the property from the rental market to cooperative or condominium ownership, see *N.J.S.A.* 2A:18–61.1.g to –61.1.*l.* Section 4 of the Act stated: "No landlord may evict or fail to renew any lease of any premises * * * except for good cause as defined in [*N.J.S.A.* 2A:18–61.1]." That section was codified as *N.J.S.A.* 2A:18–61.3.

C

In 1981, this Court considered whether a foreclosing mortgagee could obtain an order for possession against tenants holding leasehold interests in the mortgaged property created subsequent to the mortgage without complying with the requirements of the Anti–Eviction Act. *Guttenberg, supra,* 85 *N.J.* 617, 428 *A.*2d 1289. We held that the Anti–Eviction Act did not apply to foreclosing mortgagees holding a mortgage that antedated the tenants' lease-hold interest. We based that conclusion on several grounds. First, we observed that the Act's language focused on the land-lord-tenant relationship, *see id.* at 623–25, 428 *A.*2d 1289 (citing *N.J.S.A.* 2A:18–61.1 to –61.4), and that the proscription in section 4, *N.J.S.A.* 2A:18–61.3, against eviction or non-renewal except for good cause was addressed only to "landlords." 85 *N.J.* at 624, 428 *A.*2d 1289.

The Court also declined to view the Act's references to "owners" as evidence that the Legislature intended to subject foreclosing mortgagees to the requirements of the Act. We observed that foreclosing mortgagees were not considered "owners" of property under the common law until they purchased the property at a foreclosure sale. *Id.* at 630, 428 *A.*2d 1289. Moreover, we deter-mined that even if the mortgagee were subsequently to purchase the property and become an owner, no landlord-tenant relation-ship would exist between the mortgagee and the tenants whose interests were established subsequent to the mortgage because those interests previously would have been extinguished by the default and foreclosure. *Id.* at 626–27, 630, 428 *A.*2d 1289.

Because the Act's plain language did not include reference to foreclosing mortgagees, the Court declined to construe the statu-tory language to encompass mortgagees. Although the Act had abridged long-standing property rights of landlords and property owners in respect of their tenants and lessees, we were persuaded that that result did not compel a finding that the Act had similarly affected mortgagees' rights. In that connection, we noted that the value of residential property to the landlord or owner was princi-

pally derived from the income stream generated by rentals, while the value of the same property to a mortgagee was based primarily on its collateral value as security for a loan. 85 *N.J.* at 631, 428 *A.*2d 1289. We observed that a mortgagee's interests might be best served if the mortgagee could sell the property unencumbered by tenancies. *Id.* at 633, 428 *A.*2d 1289.

We also noted that application of the Act to foreclosing mortgagees would have presented practical inequities that also weighed against that interpretation. When *Guttenberg* was decided, federal mortgage-insurance programs required mortgagees to convey foreclosed property to the Federal Housing Authority ("FHA") in vacant condition. *Id.* at 631, 428 *A.*2d 1289 (citing 45 *Fed.Reg.* 59,561, 59,563 (1980) (codified at 24 *C.F.R.* § 203.381 (1993))). Thus, application of the Act to mortgagees would have conflicted with the requirements of the federal mortgage-insurance programs, potentially resulting in the loss of access to those programs for New Jersey mortgagees and prospective home buyers. (We note that the requirement that homes with federally-insured mortgages be conveyed to the FHA in vacant condition has been amended. In 1991, the Department of Housing and Urban Development adopted regulations that permit conveyance of occupied property if state or local law prohibits the eviction of tenants by mortgagees. *See* 24 *C.F.R.* § 203.670(b)(2) (1993).) Finally, we cited the inequity of saddling mortgagees with various types of burdensome leases improvidently entered into by the mortgagor subsequent to execution of the mortgage. 85 *N.J.* at 632–33, 428 *A.*2d 1289.

## D

In 1986 the Legislature amended the Anti–Eviction Act, *L.*1986, c. 138, by adding sections *N.J.S.A.* 2A:18–61.1a to –61.1f and amending *N.J.S.A.* 2A:18–61.3 and *N.J.S.A.* 2A:18–61.6. The stated purpose of the amendment was to enhance the Act's protections against the use of pretextual evictions to facilitate renovations that would justify higher rentals or achieve conversion of the building

to cooperative or condominium status. *See N.J.S.A.* 2A:18–61.1a. The amendment focuses on pretextual evictions purportedly based on the retirement of property from residential use, *N.J.S.A.* 2A:18–61.1.h, or an owner's professed intent permanently to board up or demolish the property, *N.J.S.A.* 2A:18–61.1.g(1). The amendments to *N.J.S.A.* 2A:18–61.6 strengthen the Act's provisions imposing liability for pretextual or illegal evictions by extending the scope of the Act's liability provisions to subsequent purchasers. The additions to *N.J.S.A.* 2A:18–61.6c extend liability for pretextual evictions to subsequent owners and require that those owners be informed of their responsibilities or indemnified by previous owners.

Most relevant to the issues before us are the 1986 amendments to *N.J.S.A.* 2A:18–61.3. As originally enacted in *L.*1974, *c.* 49, that provision in its entirety stated:

> No landlord may evict or fail to renew any lease of any premises covered by [*N.J.S.A.* 2A:18–61.1] except for good cause as defined in [*N.J.S.A.* 2A:18–61.1].

*L.*1986, *c.* 138, § 7 amended *N.J.S.A.* 2A:18–61.3 by adding subsection b, which expanded the Act's coverage to include not only landlords but also "the owner's or landlord's successor in ownership or possession." As a result of that amendment, *N.J.S.A.* 2A:18–61.3 provided:

> a. No landlord may evict or fail to renew any lease of any premises covered by [*N.J.S.A.* 2A:18–61.1] except for good cause as defined in [*N.J.S.A.* 2A:18–61.1].
>
> b. A person who was a tenant of a landlord in premises covered by [*N.J.S.A.* 2A:18–61.1] may not be removed by any order or judgment for possession from the premises *by the owner's or landlord's successor in ownership or possession except:*
>
> (1) For good cause in accordance with the requirements which apply to premises covered pursuant to [the Anti–Eviction Act]; or
>
> (2) For proceedings in premises where federal law supersedes applicable State law governing removal of occupants; or
>
> (3) For proceedings where removal of occupants is sought by an authorized State or local agency pursuant to eminent domain or code enforcement laws and which comply with applicable relocation laws pursuant to the "Relocation Assistance Law of 1967," * * * and the "Relocation Assistance Act[ ]" * * * .
>
> Where the owner's or landlord's successor in ownership or possession is not bound by the lease entered into with the former tenant and may offer a different lease to the former tenant, nothing in this 1986 amendatory and supplementary act shall limit that right.

[Emphasis added.]

The issue before us is whether the language amending *N.J.S.A.* 2A:18–61.3 extends application of the Anti–Eviction Act to foreclosing mortgagees.

### III

### A

■ As a preliminary matter, we note our agreement with the Josephsons' contention that they were protected by the Act even under our pre-amendment interpretation in *Guttenberg*. Our holding in that case addressed the circumstance in which the tenancy postdated the mortgage. The Josephsons contend that the *Guttenberg* holding implied that the Act protected tenants in possession pursuant to a tenancy that antedated the mortgage from eviction by the foreclosing mortgagee. The Appellate Division rejected that argument because it found that our holding in *Guttenberg* would apply only to a tenant under a written lease, not to a month-to-month periodic tenancy such as the Josephsons'. 261 *N.J.Super.* at 434–35, 619 *A.*2d 241.

A significant component of the Court's reasoning in *Guttenberg* was that the mortgage default extinguished tenancies created subsequent to the mortgage because the mortgagee's possessory interest encompassed the possessory interest held by the mortgagor when the mortgage was executed. 85 *N.J.* at 626–27, 428 *A.*2d 1289. We determined that because the default extinguished the tenancy, the mortgagee was not a landlord and would not become a landlord until the mortgagee became an owner of the property and established a new tenancy with the occupants. *Id.* at 630, 428 *A.*2d 1289. Clearly, that reasoning would not apply if the tenancy had antedated the mortgage. In that circumstance the tenant's interest would not have been extinguished by the mortgage default, and the mortgagee's interest would be subject to the tenancy. Thus, the Anti–Eviction Act would apply to the mortgagee as landlord.

Our cases regard "[a] month-to-month tenancy [as] a continuing relationship that remains unabated at its original terms until terminated by one of the parties." *Harry's Village, Inc. v. Egg Harbor Township,* 89 *N.J.* 576, 583, 446 *A.*2d 862 (1982). Accordingly, the Josephsons' month-to-month tenancy was a continuing tenancy and not an interest that was re-established each month. See *Stamboulos v. McKee,* 134 *N.J.Super.* 567, 570–71, 342 *A.*2d 529 (App.Div.1975). Rather, it began in 1978 and remained in force during the nine years prior to the execution of Chase's mortgage. When the Werners defaulted on their loan, Chase's possessory interest was subject to the Josephsons' tenancy. Accordingly, Chase stood in the relationship of owner and landlord to the Josephsons and was subject to the provisions of the Anti–Eviction Act in those capacities. We therefore conclude that even prior to the 1986 amendments the Act would have protected the Josephsons.

B

In deciding that the amendments to *N.J.S.A.* 2A:18–61.3 did not apply the Anti–Eviction Act to foreclosing mortgagees, the Appellate Division relied on both legislative history and the statutory language. First, the court determined that the stated purpose of the amendments, as revealed by the legislative history and the legislative findings in *N.J.S.A.* 2A:18–61.1a, was to curtail the use of pretextual evictions by residential-property owners seeking to convert either to high-income rental use or to condominium or cooperative ownership. 261 *N.J.Super.* at 436–39, 619 *A.*2d 241. Second, the court cited the Legislature's failure to refer specifically to "mortgagees" either in the statute or the legislative history. *Id.* at 437, 619 *A.*2d 241. The Appellate Division considered that omission to be especially significant in view of our conclusion in *Guttenberg* that the statute was not sufficiently specific to encompass mortgagees and that the Legislature would have used a more "straightforward approach" if it had intended to modify the established property rights of mortgagees. 261 *N.J.Super.* at 440, 619

*A*.2d 241 (quoting *Guttenberg, supra,* 85 *N.J.* at 627, 428 *A*.2d 1289).

To determine the proper application of the amended Anti–Eviction Act, we begin our analysis with the statutory language. Ordinarily, we derive a statute's meaning by first looking to its plain language. *State v. Sutton,* 132 *N.J.* 471, 479, 625 *A*.2d 1132 (1993). If the language's meaning is clear and unambiguous, it will be given effect "absent any *specific* indication of legislative intent to the contrary." *Town of Morristown v. Woman's Club,* 124 *N.J.* 605, 610, 592 *A*.2d 216 (1991) (emphasis added); *see GE Solid State, Inc. v. Director, Div. of Taxation,* 132 *N.J.* 298, 307, 625 *A*.2d 468 (1993).

However, in determining whether contrary intent exists, courts may examine whether a provision's plain meaning supports a result that is consistent with the overall statutory scheme. *See State v. Brown,* 22 *N.J.* 405, 415, 126 *A*.2d 161 (1956) (stating that legislative intent and meaning of statute is derived from nature of subject matter, contextual setting, and relationship to statutes *in pari materia* as well as cognate statutes in order to create "symmetrical system"). Further inquiry into a statute's intended meaning is warranted, for example, where the plain meaning seems inconsistent with the statutory scheme. *See, e.g., State v. State Troopers Fraternal Ass'n,* 134 *N.J.* 393, 634 *A*.2d 478 (1993).

The plain language of *N.J.S.A.* 2A:18–61.3b encompasses both foreclosing mortgagees and purchasers at foreclosure sales. As noted earlier, *supra* at 217–18, 638 *A*.2d at 1305, prior to default a mortgagor is entitled to possession of the premises, and after default the mortgagee is entitled to possession. To gain possession, the mortgagee must obtain an order for possession from the Superior Court, either in an action for possession pursuant to *N.J.S.A.* 2A:35–1 or as part of the action to foreclose the mortgage. Thus, the prohibition in *N.J.S.A.* 2A:18–61.3 of the removal of a tenant from the premises "by any order or judgment for possession * * * by the owner's or landlord's successor in * * *

possession" would appear to include foreclosing mortgagees seeking possession from tenants residing in the mortgaged premises.

Moreover, "[t]he purchaser of the mortgaged lands at a foreclosure sale," including the mortgagee, " 'succeeds * * * to the estate the mortgagor had at the time of the execution of the mortgage.' " *Sears, Roebuck, supra,* 124 *N.J.Eq.* at 410, 1 *A.*2d 425 (quoting *Champion v. Hinkle,* 45 *N.J.Eq.* 162, 165, 16 *A.* 701 (E. & A. 1888)). Such a purchaser is, therefore, "the owner's or landlord's successor in ownership" and would be encompassed by the plain language of the statute. The Appellate Division's concession that the new language in *N.J.S.A.* 2A:18–61.3b is "broad enough to include mortgagees," 261 *N.J.Super.* at 439, 619 *A.*2d 241, is an understatement: the Act, read literally, applies to mortgagees.

Furthermore, that reading of *N.J.S.A.* 2A:18–61.3b is consistent with the Act's overall purpose of protecting blameless tenants from eviction. *See* Statement to Assembly Bill A–1586, *enacted by L.*1974, *c.* 49 ("[R]esidential tenants frequently have been unfairly and arbitrarily ousted from housing quarters in which they have been comfortable and *where they have not caused any problems.*" (emphasis added)) (hereinafter Statement); *447 Assocs. v. Miranda,* 115 *N.J.* 522, 527–28, 559 *A.*2d 1362 (1989) (quoting language from Statement, *supra,* and concluding that Act's purpose was to protect tenants from arbitrary and unfair evictions). In passing the Act the Legislature was responding to "a critical shortage of rental housing space in New Jersey," Statement, *supra,* a situation that has not abated. *See Montgomery Gateway East I v. Herrera,* 261 *N.J.Super.* 235, 241, 618 *A.*2d 865 (App.Div. 1992) ("The Anti–Eviction Act * * * protect[s] residential tenants from the effects of what has become a critical housing shortage."). Application of the Act to the tenants of defaulting mortgagors would protect those tenants from having to confront the devastating effects of eviction not through any fault of their own but merely because they had rented property from landlords that were either unwilling or unable to meet their mortgage obligations.

Moreover, we presume that the Legislature is familiar with existing judicial statutory interpretations. *Brewer v. Porch,* 53 *N.J.* 167, 174, 249 *A.*2d 388 (1969); *County of Essex v. Commissioner, N.J. Dep't of Human Servs.,* 252 *N.J.Super.* 1, 11, 599 *A.*2d 167 (App.Div.), *certif. denied,* 127 *N.J.* 553, 606 *A.*2d 366 (1991). That a statutory amendment uses specific language to address concerns raised in prior judicial interpretations of the amended statute suggests that the Legislature considered those interpretations in drafting and enacting the amendment. *Cf. Data Access Sys., Inc. v. State,* 63 *N.J.* 158, 166, 305 *A.*2d 427 (1973) (noting that where statutory language is clear, extrinsic aids may supply "reassuring confirmation of literally apparent meaning"). We believe that the amended language of *N.J.S.A.* 2A:18-61.3 addresses many of the concerns raised in *Guttenberg* and reflects the Legislature's intent to supersede *Guttenberg*'s interpretation of the statute.

In *Guttenberg,* the Court expressly stated that a mortgagee had the right to possession on the mortgagor's default. 85 *N.J.* at 626, 428 *A.*2d 1289. More specifically, we observed that "the mortgagee, upon default, could foreclose on the leasehold and obtain an *order for possession* against the mortgagor's tenant." *Id.* at 626–27, 428 *A.*2d 1289 (footnote omitted) (emphasis added). The language amending *N.J.S.A.* 2A:18-61.3 fairly mirrors the *Guttenberg* language, stating for the first time that a tenant "may not be removed by any order or judgment for possession * * * by the owner's * * * successor * * * in * * * possession." *N.J.S.A.* 2A:18-61.3b.

Furthermore, *Guttenberg* pointed out that a mortgagee would become the mortgagor's successor in ownership only if and when the mortgagee purchased the property at a foreclosure sale. We there concluded that because the default had cut off the subsequent leasehold and had given the mortgagee the right to possession, the landlord-tenant relationship between the mortgagee and tenant had already been severed by the time the mortgagee had become an owner through the foreclosure-sale purchase. 85 *N.J.*

at 630, 428 *A*.2d 1289. Once again, *N.J.S.A.* 2A:18–61.3b specifically addresses that issue because it now forbids orders for possession against "[a] person who *was* a tenant of a landlord" in favor of "the owner's or landlord's *successor* in ownership *or* possession." *N.J.S.A.* 2A:18–61.3b (emphasis added).

The *Guttenberg* decision also noted the practical problems that would result from application of the Anti–Eviction Act to foreclosing mortgagees. We observed in *Guttenberg* that homes with federally-insured mortgages were required by federal regulations to be conveyed to the federal agency in vacant condition after foreclosure. Application of the Act to foreclosing mortgagees would thus have created a conflict with the federal requirements. 85 *N.J.* at 631–32, 428 *A*.2d 1289. In our view, the 1986 amendments address those concerns, providing an exception to the Act "[f]or proceedings in premises where federal law supersedes applicable State law governing removal of occupants." *N.J.S.A.* 2A:18–61.3b(2). Although amendments to federal regulations have removed the vacancy requirement, *supra* at 221, 638 *A*.2d at 1307, we infer that the exception in the 1986 legislation was designed to address the specific problem described in *Guttenberg.*

 We also noted in *Guttenberg* the inequity of saddling mortgagees with unfavorable lease arrangements entered into by their mortgagors. 85 *N.J.* at 632, 428 *A*.2d 1289. The last paragraph of *N.J.S.A.* 2A:18–61.3b addresses that problem by permitting a mortgagee to offer a tenant a new lease when the mortgagee is not bound by the previous one. Thus, the amendment provides that in situations in which a mortgagor has entered into an unfavorable lease subsequent to the execution of the mortgage, the mortgagee, on default, is not bound by that lease and can offer the tenant a new lease, presumably with more reasonable terms. Our dissenting colleagues, however, overstate the significance of our reference to this statutory authorization, attributing to the majority opinion the conclusion that the mortgagee's "ability to renegotiate the lease of a tenant in possession is some cure-all or panacea," *post* at 238, 638 *A*.2d at 1315. No such

inference is suggested or intended. The 1986 amendment simply confirms that when an owner's or landlord's successor is not bound by the lease with a prior tenant, the prohibition against eviction without fault does not preclude renegotiation of the lease.

*Amicus* New Jersey Bankers Association argues that the Act nevertheless prohibits mortgagees from evicting tenants who refuse the new terms. We note, however, that *N.J.S.A.* 2A:18–61.1.f specifically permits eviction for refusal to pay lawful rent increases that are not unconscionable. *See 447 Assocs., supra,* 115 *N.J.* at 530, 559 *A.2d* 1362 (distinguishing "reasonableness" requirement for lease-term change under *N.J.S.A.* 2A:18–61.1i from more relaxed "unconscionability" standard for rent increases under *N.J.S.A.* 2A:18–61.1.f). Although *N.J.S.A.* 2A:18–61.1.f requires that such increases comply with local rent ordinances, those ordinances are intended to permit an owner to receive a fair and reasonable return on the property. *Mayes v. Jackson Township Rent Leveling Bd.,* 103 *N.J.* 362, 367, 511 *A.2d* 589 (1986), *cert. denied,* 479 *U.S.* 1090, 107 *S.Ct.* 1300, 94 *L.Ed.2d* 155 (1987).

We also expressed our concern in *Guttenberg* that application of the Act to mortgagees would cause them either to forego lending to rehabilitative projects or defer foreclosure in situations in which the mortgaged property required renovations but was occupied, deciding instead to allow the owner to hold the property until it had deteriorated sufficiently to cause constructive eviction of the tenants. 85 *N.J.* at 632, 428 *A.2d* 1289. We note initially that a strategy designed to force tenants out of a building by allowing it to become uninhabitable is not one that we should countenance by permitting its threatened use to influence our interpretation of the Act. More importantly, however, we observe that the Act does permit a good-cause eviction in situations in which property has been cited for housing-code violations and the owner seeks to board up the property because repair is economically unfeasible. *See N.J.S.A.* 2A:18–61.1.g(1). Furthermore, *N.J.S.A.* 2A:18–61.-3.b(1) makes that ground for eviction available to foreclosing

mortgagees in their capacity as the owner's successor in possession or ownership, and *N.J.S.A.* 2A:18–61.6e exempts the purchaser of the vacant property at a foreclosure, execution, or bankruptcy sale from the treble-damages liability otherwise imposed by *N.J.S.A.* 2A:18–61.6c on a subsequent owner who prematurely returns the property to residential use. The purchaser at foreclosure is required only to provide the evicted tenants with notice of the property's return to residential use, *see N.J.S.A.* 2A:18–61.6e(4), a condition that is consistent with the housing rehabilitation purpose. That overall statutory scheme allows mortgagees to provide loans for the rehabilitation of housing without running the risk of being saddled with the management of occupied and unmarketable deteriorated housing.

Our conclusion that the Act, as amended, applies to mortgagees is significantly influenced by the difference in the Act's provisions concerning the treble-damage liability imposed on owners or their successors for unlawful evictions, and the provisions in respect of the treble-damage liability imposed on owners or their successors pursuant to *N.J.S.A.* 2A:18–61.6c for pretextual evictions. *N.J.S.A.* 2A:18–61.3, in conjunction with *N.J.S.A.* 2A:18–61.6d— the anti-eviction provisions—and *N.J.S.A.* 2A:18–61.6c—the pretextual-eviction liability provision—impose liability on "owners," and their successors in interest. (Specifically, *N.J.S.A.* 2A:18–61.3 prohibits unlawful evictions by the landlord or by "the owner's or landlord's successor in ownership or possession," and *N.J.S.A.* 2A:18–61.6d authorizes imposition of treble damages on those prohibited from engaging in unlawful evictions. *N.J.S.A.* 2A:18–61.6d defines "owner" to include "lessee, successor owner and lessee, and other successors in interest," and that definition applies to owners subject to liability for pretextual evictions under *N.J.S.A.* 2A:18–61.6c.)

Pursuant to the 1986 amendments, *N.J.S.A.* 2A:18–61.6e exempts purchasers at a foreclosure sale from the pretextual-eviction treble-damage provisions of *N.J.S.A.* 2A:18–61.6c. Such purchasers are typically foreclosing mortgagees. *See Carteret Sav. &*

*Loan Ass'n, supra,* 105 *N.J.* at 351, 521 *A.*2d 831 (citing ten-year study of county foreclosure sales showing that 89% of sales resulted in nominal-bid purchases by mortgagees); 30 *New Jersey Practice, supra,* § 356, at 292 n. 63; William C. Prather, *Foreclosure of the Security Interest,* 1957 *U.Ill.L.F.* 420, 427–30, *reprinted in* Allan Axelrod et al., *Land Transfer and Finance* 267 (3d ed. 1986). The pretextual-eviction treble-damage liability imposed by *N.J.S.A.* 2A:18–61.6c ordinarily applies to "an owner" or its successor that returns property to residential use less than five years after it had been boarded up or ostensibly retired from residential use. Presumably, the Legislature concluded that a foreclosing mortgagee who had no responsibility for the pretextual removal of property from the residential market should have no liability if the property were returned to the market before the five-year statutory bar had expired.

By specifically exempting foreclosing mortgagees from the treble-damage liability imposed by *N.J.S.A.* 2A:18–61.6c, the Legislature demonstrated its understanding that foreclosing mortgagees otherwise would be subject to that liability because a foreclosing mortgagee was either "an owner," *N.J.S.A.* 2A:18–61.6c, a "successor owner," *N.J.S.A.* 2A:18–61.6d, or "other successor[ ] in interest." *Id.* Because the Legislature understood those terms to encompass foreclosing mortgagees, the Legislature similarly must have understood that the phrase "an owner's * * * successor in ownership or possession"—the phrase added to the amended language of *N.J.S.A.* 2A:18–61.3, the anti-eviction provision,—also encompassed foreclosing mortgagees. However, the Legislature did not exempt foreclosing mortgagees from liability under the *anti-eviction* section of the Act.

Similarly, recent additions to the Anti–Eviction Act demonstrate the Legislature's understanding that the amended language in the anti-eviction provision encompasses foreclosing mortgagees. On December 27, 1993, the Legislature added to the Anti–Eviction Act sections *N.J.S.A.* 2A:18–61.1g and –61.1h. *See L.*1993, *c.* 342, §§ 3–4. *N.J.S.A.* 2A:18–61.1g authorizes municipalities to enact

ordinances that would require "the owner of a structure" to pay relocation costs for tenants who are evicted due to zoning or building-code enforcement, pursuant to *N.J.S.A.* 2A:18–61.1.g(3). *N.J.S.A.* 2A:18–61.1h requires "the owner" to make such payments in municipalities that have not passed the ordinances authorized by *N.J.S.A.* 2A:18–61.1g. Both new sections contain subsections that expressly exclude foreclosing mortgagees. Subsection d of *N.J.S.A.* 2A:18–61.1g and subsection e of *N.J.S.A.* 2A:18–61.1h each state: "For the purposes of this section, the owner of a structure shall exclude mortgagees in possession of a structure through foreclosure." Furthermore, *L.*1993, *c.* 342, § 2 amends the anti-eviction provision, *N.J.S.A.* 2A:18–61.3, by adding a specific reference to the new relocation-cost section enacted in *L.*1993, *c.* 342, § 3. Thus, when the Legislature exempted foreclosing mortgagees from the relocation-cost liability imposed by the new sections, it expressly considered the anti-eviction provision and excluded foreclosing mortgagees from the term "owner" only for the purposes of the new sections. Once again, no such exemption would have been required had the Legislature believed that the anti-eviction provision or the term "owner" as used throughout the Act, see *N.J.S.A.* 2A:18–61.6d, did not encompass foreclosing mortgagees.

Thus, when the Legislature sought to limit application of the Act in order specifically to protect foreclosing mortgagees, it did so by enacting a specific exemption from provisions of the Act not intended to affect them, demonstrating its recognition of the special concerns of foreclosing mortgagees. That it did not exempt foreclosing mortgagees from the Act's anti-eviction provisions strongly suggests a legislative determination that those provisions should apply to all successors in ownership or possession, including mortgagees.

## C

Chase and *amicus* New Jersey Bankers Association have raised constitutional concerns about the modification of contract

and property rights that may result from application of the amended Anti–Eviction Act to mortgagees that established their mortgage interests prior to the 1986 amendments. Although application of the Anti–Eviction Act to foreclosing mortgagees may alter their contract and common-law property rights, we are satisfied that the effect on those interests does not infringe on constitutional contract protections, *see U.S. Const.* art. I, § 10, cl. 1; *N.J. Const.* art. IV, § 7, para. 3, or due process, *see U.S. Const.* amends. V, XIV; *N.J. Const.* art. I, para. 1.

 We have long recognized that "[r]estrictions on the use of property, if in furtherance of a valid governmental purpose, serve the public interest and are considered a proper exercise of the police power even though they may result in some economic disadvantage." *New Jersey Ass'n of Health Care Facilities v. Finley (In re Review of Admin. Promulgation of Health Care Admin. Bd.: N.J.A.C. 8:30–14.1 through 8:30–14.6),* 83 *N.J.* 67, 81, 415 *A.*2d 1147, *appeal dismissed and cert. denied sub nom. Wayne Haven Nursing Home v. Finley,* 449 *U.S.* 944, 101 *S.Ct.* 342, 66 *L.Ed.*2d 208 (1980); *see also Stuyvesant Town, Inc. v. Ligham,* 17 *N.J.* 473, 483, 111 *A.*2d 744 (1955). All that is required is that the legislation be a reasonable restriction that serves the public welfare. *See State v. Schmid,* 84 *N.J.* 535, 561, 423 *A.*2d 615 (1980), *appeal dismissed sub nom. Princeton Univ. v. Schmid,* 455 *U.S.* 100, 102 *S.Ct.* 867, 70 *L.Ed.*2d 855 (1982). Enforcement of legislation that adversely affects property rights is valid when the public interest being served clearly outweighs the impairment. *See State, Dep't of Envtl. Protection v. Ventron Corp.,* 94 *N.J.* 473, 499, 468 *A.*2d 150 (1983); *see also Phillips v. Curiale,* 128 *N.J.* 608, 622, 608 *A.*2d 895 (1992) ("Fairly-debatable questions concerning the need and propriety of the means used to meet the [public interest] fall within the Legislature's police power * * * and thus * * * * ' "[e]very reasonable presumption is to be made in favor of the validity of the legislative act." ' " (quoting *Rothman v. Rothman,* 65 *N.J.* 219, 227, 320 *A.*2d 496 (1974) (quoting *Reingold v. Harper,* 6 *N.J.* 182, 194, 78 *A.*2d 54 (1951)))).

Given the continued shortage of residential housing and the related threat of homelessness, the substantial public interest in preventing the eviction of blameless tenants is indisputable. The specific interest impaired by application of the Act to mortgagees is the possibility that the resale value of residential property may be greater in vacant condition than if occupied by tenants. See *Guttenberg, supra,* 85 *N.J.* at 631, 428 *A.*2d 1289. We are convinced that the injury from that possible impairment is substantially outweighed by the public concerns that the Act addresses.

That conclusion is consistent with the established constitutionality of the Act's restrictions on the rights of property owners, *see Puttrich v. Smith,* 170 *N.J.Super.* 572, 575–76, 407 *A.*2d 842 (App.Div.1979), because the Act's effect on an owner's property interests is likely to be even greater than its effect on the limited interest of a foreclosing mortgagee. *See Guttenberg, supra,* 85 *N.J.* at 637, 428 *A.*2d 1289 (Pashman, J., dissenting). The value of the property to the mortgagee is primarily as collateral, which is realized through sale of the property. The opportunity to realize that sale value is also an interest held by the conventional property owner. In addition, conventional owners are confronted with eviction restrictions that affect their ongoing use of the property. Thus, the restrictions on property interests that were addressed in sustaining the constitutionality of the Act affect mortgagees as well as owners. *Id.* at 636, 428 *A.*2d 1289.

We draw the same conclusion with respect to claims alleging an unconstitutional impairment of contracts. In *Edgewater Investment Associates v. Borough of Edgewater,* 103 *N.J.* 227, 510 *A.*2d 1178 (1986), this Court considered a comparable challenge to the Senior Citizens and Disabled Protected Tenancy Act, a statute that increased protections for certain tenants beyond those already provided by the Anti–Eviction Act. *Id.* at 232–33, 510 *A.*2d 1178. We agreed with the Appellate Division that the tenant protections did not substantially impair contractual rights of property owners and were reasonably related to the legitimate purpose

of providing protection to tenants. *Id.* at 234, 510 *A.*2d 1178 (citing *Edgewater Inv. Assocs. v. Borough of Edgewater,* 201 *N.J.Super.* 267, 278–80, 493 *A.*2d 11 (1985)). We now conclude that that reasoning applies as well to the Anti–Eviction Act. We find no distinction of constitutional significance between the dilution of the contractual rights of mortgagees and those of owners resulting from the Act's provisions that afford enhanced protection to tenants.

## IV

We therefore hold that *N.J.S.A.* 2A:18–61.3b applies the Anti–Eviction Act to foreclosing mortgagees, and thus supersedes the Court's decision in *Guttenberg.* As amended, the Act protects tenants from eviction by foreclosing mortgagees irrespective of whether their tenancy was established before or after the execution of the mortgage.

Although retroactive application of judicial decisions is the general rule, *Rutherford Educ. Ass'n v. Board of Educ.,* 99 *N.J.* 8, 21, 489 *A.*2d 1148 (1985), our holding will be applied only prospectively, in view of "the uncertainty over the issue that has persisted" since enactment of the 1986 amendments. *Green v. Auerbach Chevrolet Corp.,* 127 *N.J.* 591, 601, 606 *A.*2d 1093 (1992). Because the exposure of mortgagees to liability for the past eviction of tenants would be inequitable, we are satisfied that the interests of justice will be best served by prospective application of our decision.

The judgment of the Appellate Division is reversed.

GARIBALDI, J., dissenting.

Today, the majority holds that the Anti–Eviction Act, as amended by *L.*1986, *c.* 38, applies to all foreclosing mortgagees holding a lien that was established prior to the leasehold of the tenant in possession. In so doing, the majority does precisely what this Court declined to do in *Guttenberg Savings & Loan Ass'n v.*

*Rivera,* 85 *N.J.* 617, 428 *A.*2d 1289 (1981)—namely, extend the Anti–Eviction Act to foreclosing mortgagees without a clear legislative indication that such a construction reflects the Legislature's intent. Relying primarily on the ambiguous words, "the owner's or landlord's successor in ownership or possession," the Court sweeps away the well-settled property rights of foreclosing mortgagees as well as the priorities set forth in the New Jersey Recording Act, *N.J.S.A.* 46:21–1 to –4.

The Court achieves that surprising result by ignoring the legislative history of the 1986 amendments, by abandoning the relevant principles underlying *Guttenberg,* and, ultimately, by erroneously consigning to the Legislature an intent to overrule our unmistakably clear holding in *Guttenberg.* I believe that we should not accomplish by judicial fiat such sweeping changes of that well-established principle. Indeed, we should achieve such changes only in the face of a clear manifestation of the Legislature's intent. Because little evidence supports the majority's conclusion that the Legislature intended the amended Anti–Eviction Act to apply to foreclosing mortgagees, I respectfully dissent from the Court's holding.

I

To understand the wide-sweeping ramifications of the Court's ruling, I look no further than *Maryland National Mortgage Corp. v. LittleJohn,* 261 *N.J.Super.* 428, 619 *A.*2d 241 (App.Div.1993), a case argued before this Court with this case.

The facts in *LittleJohn* are simple. On January 28, 1988, George and Gwendolyn Clapps purchased a single-family house in Irvington, and executed a purchase money mortgage for $58,200 on the same day. The mortgage was recorded on February 5, 1988. On February 1, 1991, the Clappses defaulted, and on November 12, 1991, the mortgagee, Maryland National Mortgage Corporation, filed a complaint seeking foreclosure and possession of the property. A *lis pendens* was filed on December 9, 1991. After Maryland National had filed both the complaint and the *lis*

*pendens,* LittleJohn entered into a lease with the Clappses to become a tenant on January 3, 1992.

Under the majority's holding today, LittleJohn, who entered into a lease with a defaulting mortgagor not only *subsequent* to the recording of the mortgage but also *subsequent* to the filing of the foreclosure complaint and the *lis pendens,* is entitled to priority over the foreclosing mortgagee. As a result, the property could be sold at the Sheriff's sale only subject to LittleJohn's leasehold.

*LittleJohn* illustrates the unfairness of including every mortgagee within the scope of the Anti–Eviction Act. The Clappses, like most purchasers of single-family dwellings, purchased the single-family dwelling as their residence. They resided in the home until they defaulted. Only after they defaulted did they lease the house. Single-family dwellings, unlike multiple-dwelling apartments, are not typically purchased for investment income but rather are purchased as primary residences. Likewise, a mortgagee lending money to the purchaser of a single-family dwelling does not consider the income from the house as additional security for the mortgage. I doubt that Maryland National or any other mortgagee would have lent the Clappses $58,000 for their home had they realized that at foreclosure the property could be sold only subject to a lease. Who is going to buy a single-family dwelling with a perpetual tenant? I suggest no one.

*LittleJohn* presents the exact situation we cautioned against in *Guttenberg, supra,* 85 *N.J.* at 632–33, 428 *A.*2d at 1298, that to burden mortgagees with disadvantageous leases entered into by defaulting mortgagors would be unfair and inequitable. The majority argues that the 1986 amendments solve that problem by permitting successors in ownership or possession to renegotiate unfavorable leases with tenants in possession. To say that that provision alleviates the burdens placed on foreclosing mortgagees by the majority's holding today is disingenuous, to say the least. Granting foreclosing mortgagees permission to negotiate with tenants in possession is a meaningless concession to a mortgagee

who cannot sell the single-family dwelling subject to a lease and who never intended to be a landlord. Moreover, although the majority would have us believe that the ability to renegotiate the lease of a tenant in possession is some cure-all or panacea, experience suggests otherwise.

Take the case of the Josephsons. They were month-to-month tenants with no lease to renegotiate. Nevertheless, when faced with an Appellate Division order to pay "market rent," they moved for a stay of that order. I believe that those forced "renegotiation" situations will seldom lend themselves to amicable negotiations but instead will cause foreclosing mortgagees unending headaches. For example, in the Josephsons' case, we have a tenant without a lease holding the mortgagee (who has no desire to be a landlord at all) over a proverbial barrel, making the mortgagee fight tooth and nail for market rent. If mortgagees do not take solace in the majority's assertion that they have no problems because they "may offer a different lease to the former tenant" pursuant to *N.J.S.A.* 2A:18–61.3b(3), I, for one, would not blame them.

II

Before addressing the specifics of the 1986 amendments, I note at the outset my disagreement with the majority's conclusion that the Josephsons could not be evicted even under our pre-amendment interpretation of the Anti–Eviction Act in *Guttenberg*. The Josephsons argue that Chase's mortgage lien on the property must be subject to their tenancy, which they entered into prior to the mortgage. Although a valid *leasehold* entered into prior to the recordation of a mortgage takes priority over the mortgage, the Josephsons unmistakably were not *leaseholders* at the time Chase recorded its mortgage. The majority admits that the Josephsons were merely month-to-month tenants. *See ante* at 223, 638 *A.*2d at 1308. Even if the mortgage were subject to the month-to-month tenancy, our interpretation of the Anti–Eviction Act in *Guttenberg* would permit a foreclosing mortgagee to termi-

nate the monthly tenancy on proper notice. *See Harry's Village, Inc. v. Egg Harbor Township,* 89 *N.J.* 576, 583, 446 *A.*2d 862, 865 (1982) (stating, "Either party may terminate a monthly tenancy by serving upon the other a month's notice to quit.").

The majority erroneously accepts the Josephsons' contention that our holding in *Guttenberg* implied that tenants in possession pursuant to a tenancy that antedated the mortgage were protected from eviction by a foreclosing mortgagee. *Guttenberg* implied no such thing. *Guttenberg* was concerned with "tenants under *leases* subordinate to the mortgage," and we held that the Anti–Eviction Act did not apply to a "mortgagee holding a lien prior to the *leasehold* of a tenant in possession." 85 *N.J.* at 623, 428 *A.*2d at 1292 (emphasis added).

Aside from the fact that *Guttenberg* was concerned with tenants under a lease (which all parties admit the Josephsons did not have at the time of the mortgage), the majority's view that even under *Guttenberg* the Josephsons would have been protected from eviction rests on a misunderstanding of month-to-month tenancies. Although a month-to-month tenancy is a continuing relationship, *see ante* at 223, 638 *A.*2d at 1308, absent application of the Anti–Eviction Act, either party may terminate the tenancy by proper notice. *Harry's Village, Inc., supra,* 89 *N.J.* at 583, 446 *A.*2d at 865. The majority's interpretation of the Josephsons' month-to-month tenancy would effectively transform it into a thirteen-year lease. That it was not a thirteen-year lease counsels against our treating it as such.

## III

Turning to the 1986 amendments to the Anti–Eviction Act, the ambiguous language relied on by the majority to abrogate a foreclosing mortgagee's rights is hardly sufficient evidence of the Legislature's intent to support overruling our clear holding in *Guttenberg.* The Legislature is presumed to be " 'thoroughly conversant with its own legislation and the judicial construction placed thereon.' " *Quaremba v. Allan,* 67 *N.J.* 1, 14, 334 *A.*2d 321,

328 (1975) (quoting *In re Keogh–Dwyer,* 45 *N.J.* 117, 120, 211 *A.*2d 778, 779 (1965)).

Neither the word "mortgagee" nor our decision in *Guttenberg* is mentioned in the 1986 amendments to the Anti–Eviction Act. I cannot conceive that a Legislature conversant with the Anti–Eviction Act and with *Guttenberg* would overturn this Court's decision and so drastically alter the fundamental property rights of foreclosing mortgagees without at least mentioning either the *Guttenberg* decision or the word "mortgagee" in the amendments or in the legislative history. Plaintiff is forced to rely on ambiguous language in *N.J.S.A.* 2A:18–61.3b referring to an "owner's or landlord's successor in ownership or possession." That language is no more explicit than the language contained in the pre-amendment version of the Anti–Eviction Act and it certainly does not mirror our admonition in *Guttenberg* that the Legislature must take a "straight[-]forward" approach should it desire "to modify established fundamental property rights of mortgagees." 85 *N.J.* at 627, 428 *A.*2d at 1295. Our statement in *Guttenberg* that "[i]t is not realistic to believe that the Legislature intended to modify the relationship [between mortgagees and tenants] by the Anti–Eviction Act without some reference to mortgagees," *id.* at 626, 428 *A.*2d at 1294, applies *a fortiori* to this case because of our explicit holding in *Guttenberg.*

As the Appellate Division aptly pointed out, a court shall not impute to the Legislature an intention to change established law in the absence of a clear manifestation of legislative intent. 261 *N.J.Super.* at 439, 619 *A.*2d at 247; *accord Elberon Bathing Co. v. Ambassador Ins. Co.,* 77 *N.J.* 1, 18, 389 *A.*2d 439, 447 (1978).

The majority, nevertheless, contends that the "plain language" of subsection b of *N.J.S.A.* 2A:18–61.3 encompasses foreclosing mortgagees because foreclosing mortgagees must obtain an order of possession to gain possession of property after default. "Thus, the prohibition in *N.J.S.A.* 2A:18–61.3 of the removal of a tenant from the premises 'by any order or judgment for possession * * * by the owner's or landlord's successor in * * * possession' would

appear to include foreclosing mortgagees seeking possession from tenants residing in the mortgaged premises." *Ante* at 225–26, 638 *A.*2d at 1309.

Although one can make an argument that this subsection was intended to refer to foreclosing mortgagees, to suggest that "plain language" dictates that result is disingenuous. To me, "plain language" would dictate that result if subsection b read: "A person who was a tenant of a landlord in premises covered by the Act may not be removed by any order or judgment for possession from the premises by a *foreclosing mortgagee.*"

An equally plausible reading of subsection b is that the phrase "owner's or landlord's successor in ownership or possession" cannot refer to foreclosing mortgagees because foreclosing mortgagees do not become successors in possession until an order of possession has been rendered and they do not become successors in ownership unless they elect to purchase the foreclosed property. Subsection b prohibits those who are *already* the "owner's or landlord's successor in ownership or possession" from obtaining an order to remove a tenant. Because a foreclosing mortgagee is not a successor in possession, at least until a judicial order grants that mortgagee possession, subsection b cannot apply to him or her.

The meaning of "owner's or landlord's successor in possession or ownership" is far from "plain." One may become a successor in ownership or possession in a myriad of ways. The language may merely evidence the Legislature's attempt to prevent clever pretexts and stratagems devised by creative landlords and owners seeking to avoid the coverage of the Anti–Eviction Act. The inclusion of the "successor" language may apply to instances in which the parties circumvented the Act through fraudulent or illusory conveyances, such as those between affiliated entities or entities undergoing reorganization. Those possibilities are equally as plausible as, if not more plausible than, the majority's conclusion that the Legislature intended the 1986 amendments to overturn *Guttenberg* and to subvert the well-defined property rights of mortgagees.

In any event, plainly the majority's "plain language" is not so plain. Moreover, the majority's attempt to buttress its "plain meaning" construction is similarly unconvincing. The majority alleges that because *N.J.S.A.* 2A:18–61.6e exempts purchasers at a foreclosure sale from the pretextual-eviction treble-damage provision (*N.J.S.A.* 2A:18–61.6c), foreclosing mortgagees are not exempt from the anti-eviction section of the Act (*N.J.S.A.* 2A:18–61.3b). The majority states that purchasers at foreclosure sales are typically foreclosing mortgagees. *Ante* at 230, 638 *A.*2d at 1311. Thus, *N.J.S.A.* 2A:18–61.6e's exemption from treble damages for "owners" obtaining title at a foreclosure sale is really a statutory exemption for foreclosing mortgagees. Exempting owners who gain title at foreclosure sales from the treble-damages provision is seen by the majority as a one-time exclusion of foreclosing mortgagees from the term "owners." Because foreclosing mortgagees are not similarly excluded from the term "owners" in the anti-eviction section, the Legislature must have intended that section to apply to them. So goes the argument.

That argument begs the very question before us. Rather innocuously, the majority states that because purchasers at foreclosure sales are typically foreclosing mortgagees, the exemption from treble damages for an owner obtaining title by means of a foreclosure sale is really an exclusion for foreclosing mortgagees from the term "owners." But the statute does not say that. It says merely that if you become an owner by means of a foreclosure sale, you cannot be subject to pretextual-eviction treble-damage liability. The statute does not read as an exemption for foreclosing mortgagees because they are not within the scope of the term "owners" for this section. We settled in *Guttenberg* that foreclosing mortgagees were not within the scope of the term "owners." 85 *N.J.* at 629–30, 428 *A.*2d at 1296. The question before the Court today is whether a foreclosing mortgagee is an "owner's or landlord's successor in ownership or possession" for the purposes of *N.J.S.A.* 2A:18–61.3b. The majority's discussion of the treble-damage provision and who may or may not be liable under it sheds no light on that question.

Moreover, a *plain* reading of the 1986 amendments reveals that "owners" would be subject to treble-damage liability unless they obtained title to the premises at a foreclosure sale *and* the former owner had previously evicted the tenants on the premises by permanently retiring the premises from residential use or by permanently boarding up the premises. *See N.J.S.A.* 2A:18–61.1 e. The implication of this provision is similarly *plain:* the amendments were designed to apply when an owner has sought to retire property from residential use or to board it up permanently. That exemption for those obtaining title at a foreclosure sale is statutorily linked to such situations. The amendment does not imply that foreclosing mortgagees are generally subject to the Act. It is merely a legislative recognition that those obtaining title to realty at foreclosure sales should be held blameless to tenants who have *already* been evicted by the former owner under certain provisions of the Act. Contrary to the majority's opinion, the 1986 amendments were not focused in the least on foreclosing mortgagees.

Indeed, the omission of any reference to "mortgagees" indicates that the Legislature did not design the amendments to overturn *Guttenberg* and to subject mortgagees to the Anti–Eviction Act. Where statutory language is not plain on its face, the statute must be interpreted to effectuate legislative intent. *See, e.g., Cedar Grove, Inc. v. Stanzione,* 122 *N.J.* 202, 213, 584 *A.*2d 784, 789 (1991); *State v. Maguire,* 84 *N.J.* 508, 514, 423 *A.*2d 294, 297 (1980). I therefore now turn to the traditional sources of legislative intent to demonstrate that the Legislature never intended the 1986 amendments to include foreclosing mortgagees.

The legislative findings describe the problem before the Legislature as the owners' "removal of blameless tenants in order to directly or indirectly profit from conversion to higher income rental or ownership interest residential use." *N.J.S.A.* 2A:18–61.1a.a. The Legislature's concern was the use of "pretexts [and] strategems" to circumvent state eviction laws, *N.J.S.A.* 2A:18–61.1a.b, resulting in a plethora of hardships to displaced tenants,

*N.J.S.A.* 2A:18–61.1a.d to –61.1a.e. Consequently, the Legislature found, without any mention whatsoever of problems caused by foreclosing mortgagees, that citizens should receive "the broadest protections available under State eviction laws. . . ." *N.J.S.A.* 2A:18–61.1a.d. Those findings, like the statutory language, suggest that the Legislature was not thinking of mortgagees.

When we probe beyond the Legislature's words and findings, the legislative intent becomes even clearer. The 1986 amendment resulted from two separate bills, S–1912 and A–1840, which were consolidated before enactment. Nowhere in the legislative history does the word "mortgagees" appear. Nothing even hints that the Legislature was contemplating that the amendments would apply to foreclosing mortgagees.

The statement to A–1840 asserts that the "bill would prevent apartment house owners from using certain legal pretexts to eject tenants in order to make the building available for conversion to condominiums or cooperatives, or for subsequent rental at more lucrative rates." *Statement Accompanying Assembly No. 1840* (Introduced by Assemblyman Catrillo, *et al.*), at 3 (1986). It explains that "[e]xisting law" permitted "landlords" to terminate tenancies either on the pretext of retiring the premises from residential use or by simply boarding up a building. *Ibid.* The bill would now prevent removal of the tenants by such means. *Ibid.* The statement makes clear that the Act is aimed at landlords, not foreclosing mortgagees.

The phrase at issue here, "successor in ownership or possession," first appeared in S–1912. Like the statement accompanying A–1840, the statement to S–1912 asserts that it would prevent "landlords" from using legal pretexts to eject tenants to convert property to higher-rental units. *Statement Accompanying Senate No. 1912* (Introduced by Sen. Jackman), at 5 (1986). The statement repeatedly refers to the current rights of "landlords" and "tenants" when discussing how the bill would change their relationship. *See id.* at 5–6. Moreover, it states that a landlord must

inform a "prospective purchaser or lessor" in writing of any existence of any restrictions that apply to the property. *Id.* at 5.

The statement of the Senate Labor, Industry and Professions Committee regarding the combined bill of the Senate and the Assembly confirms that the phrase "prospective purchaser" does not include a foreclosing mortgagee. The first paragraph of the statement recites: "This bill addresses abuses that tenants suffer when a landlord evicts them because he seeks to permanently board up or demolish his building or seeks to retire permanently the building from residential use and then subsequently allows residential occupancy of the building." Senate Labor, Industry and Professions Committee, *Statement to Senate Committee Substitute for Senate No. 1912, and Assembly No. 1840,* at 1 (1986). Notably absent is any reference to mortgagees.

One piece of legislative history mentions foreclosures. An amendment proposed by Senator Lesniak, part of which affected *N.J.S.A.* 2A:18–61.6e, provided an exemption from the Act for a "purchaser (or his successor) of premises at a foreclosure sale, execution sale or bankruptcy sale ... when the former owner of the premises sought to retire permanently the premises from residential use or to permanently board up or demolish the premises and evict[ ] the tenants...." *Statement Accompanying Proposed Amendments to Senate Committee Substitute for Senate Bill No. 1912, and Assembly Bill No. 1840,* at 2 (1986). As the statement reflects, the amendment affects owners or their successors in interest who permanently board up property or retire it from residential use. In that limited context, the Lesniak amendment exempts purchasers at foreclosure sales, including foreclosing mortgagees. The 1986 amendment did not exempt foreclosing mortgagees from any other section of the Act because the Act did not apply to them.

Consistent with the legislative statements, Governor Kean, when signing the bill, proclaimed that the 1986 amendment would protect "tenants from the threat of eviction in real estate conversion projects." *Governor's News Release for S–1912/A–1840,* Oct.

29, 1986, at 1. The Governor's message emphasized that the changes would "provid[e] more protection for tenants against inequitable displacement by landlords." *Ibid.* Like the Legislature, the Governor perceived that the statute was aimed only at landlords who attempted to evict tenants through pretextual means.

Contrary to the majority's view, *ante* at 231, 638 *A*.2d at 1312, recent legislative history reconfirms that the Legislature did not believe that it was including foreclosing mortgagees within the prohibition against evicting tenants without "good cause" by enacting the 1986 amendments. Last year, in the recently completed second session of the 205th Legislature, A–2402 was introduced into the Assembly. Assembly No. 2402 (1993). The sole purpose of the bill was to require a foreclosing mortgagee or other lienholder to comply with the Act. In relevant part, the committee statement recites:

> The purpose of this bill is to reaffirm the intent of the Legislature in enacting the 1986 amendments to the Anti–Eviction law by including foreclosing mortgagees and other lienholders, along with landlords and owners, as parties who must comply with the procedures set forth in the anti-eviction act, P.L.1974, c. 49, when evicting tenants from certain rental property. The New Jersey Supreme Court held in *Guttenberg S. & L. Ass'n v. Rivera*, 85 *N.J.* 617 [428 *A*.2d 1289] (1981), that a mortgagee that foreclosed on property was not covered by that act, and did not have to comply with the statutory procedures when evicting tenants whose leaseholds were subsequent to the mortgage. It is the Legislature's intent that mortgagees that foreclose on rental property covered by the act must comply with the provisions of the act, and may evict tenants only on the basis of "good cause" as provided by the act.
>
> [Assembly Housing Committee, *Statement to Assembly No. 2402*, at 1 (1993).]

The Assembly passed the bill, but the Senate never posted it for a vote. Consequently, it died at the end of the session. A similar bill, A–178, has been introduced in the current legislative session. Assembly No. 178, 206th Leg. (1994). The Legislature's refusal to adopt A–2402 echoes the Legislature's consistent message that the 1986 amendments to the Anti–Eviction Act were not intended to overrule our clear holding in *Guttenberg.*

The majority erroneously finds support for its interpretation of the 1986 amendments in recent additions to the Anti–Eviction Act.

See *ante* at 231, 638 *A*.2d at 1312. As the majority explains, on December 27, 1993, the Legislature once again amended the Anti–Eviction Act by adding *N.J.S.A.* 2A:18–61.1g and –61.1h. *Ibid.* The former empowers municipalities to enact ordinances that would provide relocation assistance to tenants who are evicted because of an owner's failure to abide by zoning regulations. The latter requires owners to provide the same relocation assistance directly to evicted tenants in municipalities that have not passed an ordinance pursuant to *N.J.S.A.* 2A:18–61.1g. Mortgagees in possession through foreclosure are not subject to relocation liability under the amendment. *N.J.S.A.* 2A:18–61.1g.d and –61.1h.e.

The majority concludes, as it did with reference to the treble-damage-liability provision, that the Legislature's exclusion of mortgagees who gain possession through foreclosure from the potential liability authorized by this section implies that the Legislature intended to cover foreclosing mortgagees in the anti-eviction section of the Act. Just as was the case with the treble-damage provision, those recent additions merely reflect a legislative recognition that mortgagees obtaining possession or title at a foreclosure sale should be held blameless to tenants who have *already* been served with a notice of eviction by a former owner pursuant to *N.J.S.A.* 2A:18–61.2g.

Had the Legislature intended that foreclosing mortgagees be covered under the anti-eviction section of the Act, it would have passed A–2402 last year or it will pass A–178 this year. Until the Legislature provides the Court with a clear indication that it has overruled *Guttenberg,* we should not infer its intent to do so from the recent amendments providing relocation assistance to evicted tenants. That mortgagees who obtain possession through foreclosure are not liable for such relocation assistance in no way suggests that they are subject to the "good cause" requirements of the Act.

## IV

Furthermore, I disagree with the majority that the public-policy reasons for excluding foreclosing mortgagees from the Act no

longer exist. *Ante* at 227, 638 *A.*2d at 1310. Significant reasons still exist for excluding foreclosing mortgagees from the Act.

First, the majority's decision today conflicts with the underlying policy of *N.J.S.A.* 46:21–1, a section of the New Jersey Recording Act, which provides:

Except as otherwise provided herein or in chapter 9 of Title 12A of the New Jersey Statutes, whenever any deed or instrument of the nature or description set forth in section 46:16–1 of this Title, which shall have been or shall be duly acknowledged or proved and certified, shall have been or shall be duly recorded or lodged for record with the county recording officer of the county in which the real estate or other property affected thereby is situated or located such record shall, from that time, be notice to all subsequent judgment creditors, purchasers and mortgagees of the execution of the deed or instrument so recorded and of the contents thereof.

The Recording Act unmistakably provides that a duly-recorded interest in real property serves as notice to and takes priority over the interests of all persons obtaining subsequent interests in the property. The majority's interpretation of the Anti–Eviction Act gives tenants a superior right to possess the leasehold despite the recordation and priority of the mortgagee's security interest.

Thus, the Court has elevated tenancies subsequent to a mortgage above the priorities scheme of the Recording Act. "This construction is in complete derogation of the recording act policy that a first-in-time interest in realty has priority." Harold N. Hensel, Note, *New Jersey's Anti–Eviction Act Prohibits Removal of Residential Tenants by Foreclosing Mortgagees Upon Default of Landlord Mortgagor Absent Good Cause*, 11 *Seton Hall L.Rev.* 311, 324 (1980). "The resolution of the conflict between the Anti–Eviction Act policy and the first-in-time, first-in-right policy underlying the recording acts and mortgage law should be left to the legislature, which is in the best position to resolve it." *Id.* at 326.

Similarly, the Legislature is better suited than the courts to analyze the other effects of applying the Anti–Eviction Act to foreclosing mortgagees. In *Guttenberg*, we noted a substantial difference between the concerns of mortgagees and those of landlords regarding mortgaged property. 85 *N.J.* at 626–27, 428 *A.*2d at 1294–95. We recognized that the value of mortgagees'

security interests could be "substantially impaired by disadvantageous leases, adversely affecting the property's value" were we to construe the Act to apply to foreclosing mortgagees. *Id.* at 627, 428 *A.*2d at 1295.

In *Guttenberg* we also cited evidence that undermining mortgagees' security interests could, in turn, "accelerate the decrease in the supply of mortgagee funds" and could discourage lending for the rehabilitation of urban housing. *Id.* at 631, 428 *A.*2d at 1297. Those results would, of course, conflict with the larger purposes of the Anti–Eviction Act. If the value of real estate as security for loans fell, mortgagees would significantly reduce the level of lending in areas that traditionally experienced elevated default rates. That, of course, would most severely affect depressed urban areas.

The mortgagee banks' reluctance to become involved in running apartment buildings creates additional problems. Furthermore, the costs of renegotiating leases with a defaulting mortgagor's former tenants, or bringing legal action against tenants refusing to negotiate, may either diminish the property's foreclosure value or create an impenetrable cloud on the property, thus rendering it unsalable. In this scenario, if subjected to the Anti–Eviction Act's eviction-for-cause restraints, mortgagees presently conducting business in New Jersey may choose to follow the bank that refused to do business in Washington, D.C. Thus, while the amended Act indicates that tenants are to be accorded the broadest possible protections, the practical effect of including foreclosing mortgagees within the Act's good cause restraints may significantly hinder mortgage funding in New Jersey.

[James E. Tonrey, Note, *Protecting Tenants from Foreclosing Mortgagees: New Jersey Anti–Eviction Act In the Post–Guttenberg Era,* 23 *Seton Hall L.Rev.,* 1006, 1064 (1993) (footnotes omitted) (hereinafter Tonrey).]

Take for example, the District of Columbia, which construed its anti-eviction legislation to cover foreclosing mortgagees. *See Administrator of Veterans Affairs v. Valentine,* 490 *A.*2d 1165, 1169–79 (D.C.App.1985) (holding mortgage insurer prohibited from evicting tenants by District of Columbia's Rental Housing Act despite fact that mortgagee had purchased property at foreclosure and had conveyed it to insurer). After that decision, one lender refused to make further loans in the District. Tonrey, *supra,* 23 *Seton Hall L.Rev.* at 1064.

Plaintiff argues that this Court's holding today will seriously chill the development of affordable housing in New Jersey by scaring away potential mortgagees whose capital is vital to housing developments. Plaintiff focuses on the long-range impact that making all mortgagees' rights subordinate to any and all tenants will have on the source of mortgage funds. It concludes that subjecting foreclosing mortgagees to the Anti–Eviction Act will decrease the supply of mortgage funds and will be particularly devastating to the inner cities. Additionally, plaintiff asserts that the economic burdens imposed on mortgagees by the renegotiation of leases with a defaulting mortgagor's former tenants and by litigation in the event the parties cannot agree on new terms will undoubtedly make a potential mortgagee think twice about extending mortgage financing.

Defendants, on the other hand, allude to the impact of the present foreclosure climate on tenants. They assert that without the protection of the Anti–Eviction Act, tenants will experience a devastating impact from the present wave of foreclosures. They focus on the more immediate concerns of individual tenants facing eviction as a result of foreclosure.

I admit that one can muster good arguments on both sides of the issue. I do not profess to know which is better. However, I do know that the issue is more properly addressed by the Legislature than by this Court. The balance between the immediate concerns of the tenants and the long-term supply of mortgage funds is one more properly struck by the Legislature. Foreclosing mortgagees should be subject to the Anti–Eviction Act only by informed legislative judgment.

One final note: that the Legislature, as well as the banking and lending institutions, would have failed to address these important and complex public-policy issues had the Legislature intended the 1986 amendments to the Anti–Eviction Act to apply to foreclosing mortgagees is inconceivable. That no hearings were held and no banking or lending institutions voiced concerns again suggests that no one, including the Legislature, believed that the 1986

amendments applied to foreclosing mortgagees. The Legislature ordinarily does not try to slip such sweeping policy changes by both the general public and the special interests in the hope that no one will notice. The 1986 amendments were no aberration in that regard; they simply do not address foreclosing mortgagees.

CLIFFORD and POLLOCK, JJ., join in this opinion.

*For reversal*—Chief Justice WILENTZ and Justices HANDLER, O'HERN and STEIN—4.

*For affirmance*—Justices CLIFFORD, POLLOCK and GARIBALDI—3.