## CHARLES H. WELLMAN v. RUDOLPH BERGMANN.

1. By the District Court act, a summons cannot be served on a non-resident of the city, beyond the corporate limits of such city.
2. Clear and unambiguous expressions of intention, in a statute, will control a literal interpretation which is inconsistent with other and overruling provisions in the same statute.

On *certiorari* to the District Court of Jersey City.

Argued at June Term, 1882, before Justices SCUDDER and KNAPP.

For the plaintiff, *M. T. Newbold.*

For the defendant, *T. Ryerson.*

The opinion of the court was delivered by

SCUDDER, J. The only reason assigned for reversing the judgment of the District Court is that it had not jurisdiction of the person of the defendant. This objection was made on the return of the summons and throughout the trial. It is admitted that the summons was served at the residence of the defendant, personally upon him, outside of the limits of Jersey City, and within the county of Hudson. Section 6 of the act constituting District Courts in certain cities in this state, gives jurisdiction in the cities where they may be established, over some causes of action, and a special jurisdiction of a particular class of persons. It enacts " that every suit of a civil nature at law, where the debt, balance or other matter in dispute does not exceed, exclusive of costs, the sum or value of one hundred dollars [since extended to three hundred dollars], shall be and hereby is made cognizable in any District Court of this state, in the cities where they may be established, to hear, try and determine the same according to law, although

the cause of action did not arise in said city.  Said District Court shall have jurisdiction exclusive of all other courts whatsoever, in all cases arising under this act, where the party defendant resides within the corporate limits of the city wherein said court or courts shall be established." To this, a proviso is added, excepting certain causes of action. This section clearly makes the District Court a local court in the city where it may be established.  By section 178, the salaries of the judges and clerks of these courts are to be paid by the mayor and common council of the cities wherein said courts may be established; and by section 179, the clerk shall render detailed monthly statements to the treasurer of such city, of receipts and disbursements, and pay over to the treasurer, monthly, the balance remaining in his hands.  By section 181, additional fees are given to officers, to be paid out of the treasury of the city; and by section 183, the mayor and common council of each city shall provide suitable rooms for the transaction of the business of said court or courts, and procure suitable furniture therefor, and such books and stationery as may be necessary.

It appears from these sections, and others that might be cited, that the entire expense of the maintenance of these courts is charged upon the cities where they are established.  Other references throughout the act show that these courts are, what the name imports, district, or city courts, carefully circumscribed in boundaries and powers, established for the convenience of certain municipalities, and properly chargeable to them.  The only part of the act which seems to extend this construction is found in a part of the fourteenth section, which defines the territorial jurisdiction.  Section 14 enacts "that the territorial jurisdiction of every judge of any District Court, under this act, shall be co-extensive with the limits of the city for which he is appointed and commissioned." Nothing could be more definite and fixed than this expression to make the boundary of the city the limitation of the jurisdiction of the District Court.  But this is not all of the section, for there is added, "his writs, precepts and pro-

cess shall run in and through such county, and he may, in causes pending before him, award writs of subpœna for witnesses, into other counties of this state." It is claimed that this last clause of the section enlarges the jurisdiction of the city District Court judges, so that they may, by their writs, precepts and process, bring all the inhabitants of the county into their local courts. It is plain that, if this clause is so construed, it is at variance with the entire scope and purpose of the act, beginning with its title and running through all the sections. How this clause came into the fourteenth section, probably appears when we look at section 9 of the act constituting courts for the trial of small causes, from which, with other sections of that act, it was evidently copied in drawing this later statute. This section, after defining that the territorial jurisdiction of every justice of the peace, under that act, shall be co-extensive with the limits of the county for which he is appointed and commissioned, follows with the clause in the exact language used in the District Court act. The words "such county" are applicable in the case of justices' courts, for their jurisdiction is co-extensive with the limits of the county, but "such county," in the District Court act, has no proper relation to the limits of the city, in the preceding clause of this section (14.) Where a mistake is so manifest, there should be no hesitation in giving effect to the legislative intention, as expressed in almost every section of the District Court act, and in deciding that the relative word "such" binds this clause to the city limitation, which is before it in the same section.

The authority to give this construction can be found within the cautious expression used in *Lane* v. *Schomp*, 5 *C. E. Green* 82, 86, " that words should never be supplied or changed unless to effect a meaning clearly shown by the other parts of the statute, to carry out an intent somewhere expressed," for here the intent is everywhere expressed, and a literal effect cannot be given to this single word " county " without changing the whole statute. The question is simply, which is the greater, and which shall stand? Does the entire act, in its

structure, show that these courts were intended to be county courts, or city courts? I know the extreme reluctance with which courts change words found in a statute, but where it becomes necessary, in a case like this, that it should be done, *ut res magis valeat quam pereat*, they have not failed to do what the legislature obviously intended to do, and to give effect to their purpose; they have not allowed the mere error of a copyist to annul a beneficial statute. This is not guessing at legislative intention, in opposition to the words they have used, but giving effect to a purpose so manifest that no one can doubt it. The principle which will guide a court in such cases is well stated in *Rex* v. *Poor Law Commissioner*, 6 *Ad. & E.* 7, where it is said: "It is so important for the court, in construing modern statutes, to act upon the principle of giving full effect to their language, and of declining to mould that language, in order to meet either an alleged inconvenience or an alleged equity, upon doubtful evidence of intention, that nothing will induce me to withdraw the case from the operation of a section which is within its words, but clear and unambiguous evidence that so to do is to fulfil the general intent of the statute, and also that to adhere to the literal interpretation is to decide inconsistently with other and overruling provisions of the same statute. Where the evidence amounts to. this, the court may properly act upon it." This is the law of construction, and this is such a case. In accordance with the "overruling provisions" of the act, and of the first part of the same section on which this question of jurisdiction has been raised, we shall hold that there was no intention of the legislature to enlarge the jurisdiction of the District Courts in cities, so as to include the entire counties within which they are located.

Knowing the stringency of the rule of construction in such cases, I was at first inclined to say that the last clause of the fourteenth section might be construed to give jurisdiction to issue writs, precepts and process to run in and through the county in cases wherein the District Court has exclusive jurisdiction. Where the party defendant resides within the cor-

porate limits of the city, so that he and his property might be followed to the limits of the county; but it is a doubtful construction, and it is not important to determine it in this case. The defendant being a resident of the county of Hudson, outside the limits of Jersey City, and the summons having been served upon him at his residence, without legal authority, the judgment of the District Court will be reversed, but without costs, as the error was not the plaintiff's, but of the court which assumed jurisdiction, or of the officer who served the process.