KUSKIN, J.T.C.
Plaintiffs 1995 local property tax appeal seeking a tax exemption was dismissed by the Sussex County Board of Taxation for nonpayment of 1994 taxes. Defendant has moved to dismiss plaintiffs Tax Court complaint on the basis of such non-payment.
Plaintiff is the owner of 100.57 acres of vacant land designated as Block 50002, Lot 6, on the Tax Map of the Borough of Hopatcong. For the tax year 1995, five acres of the land were granted an exemption from local property tax pursuant to N.J.S.A 54:4-3.24, which provides:
All real and personal property used for the purposes and in the work of ... the Boy Scouts of America ... shall be exempt from taxation under this chapter if the legal or equitable ownership of such property is in [said association] using said property and the land so exempt does not exceed 5 acres in extent----
The remaining 95.57 acres were assessed for $130,700. Plaintiffs application to the tax assessor for exemption from taxation for this remaining acreage was rejected, and plaintiff filed an appeal with the Sussex County Board of Taxation (“County Board”). At the date of filing, local property taxes for the full tax year 1994 were unpaid as were the taxes for the first quarter of the tax year 1995.
On May 8, 1995, the scheduled hearing date for the appeal, defendant moved before the County Board to dismiss the appeal under N.J.SA 54:3-27 on the grounds that 1994 taxes were unpaid. Plaintiff had hot sought a tax exemption for 1994. On May 18, 1995 (see N.J.AC. 18:12A-1.6(e)), the County Board heard and granted defendant’s motion and dismissed the appeal.
Plaintiff filed its complaint with the Tax Court on June 30,1995. At the time of such filing, 1994 taxes remained unpaid, and neither the February 1995 nor May 1995 quarterly tax installments were paid. 1994 taxes were paid in full on August 21,1995.
The limited issue before me is whether the tax payment requirements of N.J.S.A 54:3-27 are applicable to an appeal seeking an exemption from taxation. If so, plaintiffs complaint must be *441 dismissed. Bllum Ltd. Partnership v. Bloomfield Tp., 15 N.J.Tax. 409 (Tax 1995).
There are two separate statutory tax payment requirements applicable to the filing of tax appeals. N.J.S.A 54:3-27 contains the requirement pertaining to the initial filing of an appeal with a county board of taxation or the Tax Court.
A taxpayer who shall file an appeal from an assessment against him shall pay to the collector of the taxing district no less than the total of all taxes and municipal charges due, up to and including the first quarter of the taxes and municipal charges assessed against him for the current tax year in the manner prescribed in R.S. 54:4-66 [which provides for quarterly installments on February 1, May 1, August 1 and November 1 of each tax year].
N.J.S.A. 54:51A-l(b) contains a separate payment requirement pertaining to appeals from county boards of taxation to the Tax Court.
At the time that a complaint has been filed with the tax court seeking review of judgment of county tax boards, all taxes or any installments thereof then due and payable for the year for which review is sought must have been paid.
If (as here) the basis of an appeal is a claim of exemption from local property taxes, N.J.S.A. 54:51A-3 applies. This statute provides:
Class 3B (Farm Qualified) and Class 15D, E and F (Exempt Property) in appeal where a statutory qualification is the subject of the appeal are exempt from those provisions contained in subsection b. of R.S. 54:51A-1.
The subject land would, under N.J.AC. 18:12-2.2(r), be Class 15F[1] property if it is entitled to an exemption under N.J.S.A. 54:4-3.24.
Based upon the foregoing statutory provisions, the plaintiff was required, under N.J.S.A 54:3-27, to have paid 1994 taxes as well as first quarter 1995 taxes (due on February 1, 1995) in order to pursue its appeal before the County Board seeking an exemption for 1995. N.J.S.A 54:51A-3 expressly exempted plaintiff from the *442 payment requirements of N.J.S.A 54:51A-l(b) in connection with plaintiffs appeal from the County Board to the Tax Court. Neither N.J.S.A. 54:51A-3 nor any other statute contains an express exemption from the payment requirements of N.J.SA 54:3-27 in connection with an appeal to a county board of taxation or a direct appeal to the Tax Court. The statutory scheme is, on its surface, clear and supports the County Board’s dismissal of plaintiffs appeal.
Closer examination, however, reveals an anomaly in the statutory scheme resulting from the limited tax payment exemption provided by N.J.SA 54:51A-3. Under this statute a taxpayer claiming exemption may pursue an appeal without making payment of the tax installments due for the year of appeal (here the installments due for the first and second quarters of 1995), but under N.J.SA 54:3-27 the taxpayer must make payment of the tax installment due for the first quarter of the year of appeal (here the first quarter of 1995) and payment of all municipal charges due for the year of appeal as well as all taxes and municipal charges due for all prior years. The obvious explanations for this anomaly are, upon analysis, unsatisfactory.
The explanation that the limited tax payment exemption in N.J.S.A 54:51A-3 constitutes a legislative effort to provide an essential tax collection mechanism is unsatisfactory because there are comprehensive provisions for tax collection in N.J.S.A. 54:5-1 to -129, which provisions operate independently of N.J.S.A 54:3-27 and apply whether or not a tax appeal is filed. See Brinkley v. Western World, Inc. 275 N.J.Super. 605, 612, 646 A.2d 1136 (Ch.Div.1994). Cf. Town of West Orange v. Block 107, 162 N.J.Super. 314, 392 A.2d 1213 (App.Div.1978). The explanation that the limited exemption constitutes a legislative effort to ease the tax payment prerequisites in connection with exemption appeals is unsatisfactory because N.J.S.A 54:51A-3 excuses payment only of tax installments due for the year of appeal, while N.J.S.A. 54:3-27 requires payment of a potentially much larger amount consisting of all taxes and municipal charges due “up to and including” the date of filing of the initial appeal.
*443 Under these circumstances it is necessary and appropriate to examine the applicable statutes, and their origins, in greater depth. Although it is the court’s responsibility to respect and enforce the legislature’s will as manifested in the statutory language, Chase Manhattan Bank v. Josephson, 135 N.J. 209, 225, 638 A.2d 1301 (1994), it is also the court’s responsibility to interpret and apply the legislature’s enactments in a manner consistent with the statutory intent and purpose and to avoid unreasonable or absurd results. State v. Gill, 47 N.J. 441, 444, 221 A.2d 521 (1966). In so doing the court may and should consider legislative history and context, State in Interest of M.T.S., 129 N.J. 422, 431, 609 A.2d 1266 (1992), and the evolution of the particular statute as well as public policy factors, State v. Tischio, 107 N.J. 504, 518, 527 A.2d 388 (1987), appeal dismissed, 484 U.S. 1038,108 S.Ct. 768, 98 L.Ed.2d 855 (1988).
Canons of statutory interpretation provide limited assistance in this quest for the proper meaning of a statute. There are canons, both in Latin and in English, which will support almost any approach to interpretation which a court wishes to adopt. See generally Karl N. Llewellyn, Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes Are To Be Construed, 3 VancLL.Rev. 395 (1950) (cataloging twenty-eight canons of statutory interpretation and their respective direct opposites.) There is, however, agreement in the more recent New Jersey cases that the following very general principles should be applied:
a) the court should attempt to determine the legislative intent in enacting particular legislation, AMN, Inc. v. South Brunswick Tp. Rent Leveling Bd. 93 N.J. 518, 525, 461 A.2d 1138 (1983);
b) legislation should be interpreted in the context of related statutes, New Jersey Transit Corp. v. Somerville Bor., 139 N.J. 582, 589, 661 A.2d 778 (1995) and
c) the “plain meaning” of a statute does not foreclose further analysis in light of the legislative purpose, the context of the statute, and the history of the statute. Chase Manhattan Bank v. Josephson, supra, 135 N.J. at 225, 638 A.2d 1301.
The statutory history relevant to defendant’s motion begins with L.1918, c. 236 (“Chapter 236”), which permitted the filing of *444 appeals of tax assessments with county boards of taxation and provided in § 703 (the original version of N.J.S.A 54:3-27) that:
Any taxpayer who shall file an appeal from an assessment against him may pay to the collector of the taxing district such portion of the taxes assessed [sic] him as he would be required to pay in the event of his appeal being sustained____
Section 704 of Chapter 236 (the original version of N.J.S.A 54:2-39) permitted appeals from judgments of county boards of taxation to the State Board of Taxes and Assessment. Neither § 704 nor any other section of Chapter 236 imposed a tax payment requirement in connection with an appeal to the State Board.
These payment provisions remained unchanged until L.1965, c. 193 which amended N.J.S.A. 54:2-39 to designate the Division of Tax Appeals as the agency for appeal from county boards of taxation and to include the following:
Where the petition of appeal [to the Division of Tax Appeals] is from a judgment as to the assessed valuation of the appellant’s property, there shall be annexed to the petition evidence of payment of that portion of the taxes due and payable as to the property which are not in substantial controversy.
Under the foregoing legislation, a taxpayer claiming exemption from local property taxes could file an appeal to a county board of taxation and to the Division of Tax Appeals (and its predecessors the State Board of Taxes and Assessments and the State Board of Tax Appeals) without making any payment of taxes. L.1975, c. 361 (“Chapter 361”), which amended N.J.S.A 54:3-27 (but not N.J.S.A. 54:2-39), imposed, for the first time, a specific payment requirement in connection with appeals to county boards of taxation:
A taxpayer who shall file an appeal from an assessment against him shall pay to the collector of the taxing district no less than 90% of the taxes assessed against him in the manner prescribed in R.S. 54:4-66 even though his petition to the Tax Appeal Board might request a reduction in excess of 10% of the taxes assessed for the full year.
The reference to the “Tax Appeal Board” in the quoted language appears to be an oversight, with the proper reference being to the county board of taxation. N.J.S.A 54:3-27 historically related only to appeals to county boards of taxation, and N.J.S.A 54:2-39 expressly applied to appeals from county boards to the Division of Tax Appeals. Direct appeals to the Division of Tax Appeals and *445 its predecessors were not permitted. In addition, the Statement annexed to Assembly Bill 2147, enacted as L.1977, c. 357 (see discussion below), notes that the requirement for payment of ninety percent of taxes assessed is applicable only to county board of taxation appeals and that “[t]here is no direction in current law regarding tax payments [in connection with appeals from county boards to the Division of Tax Appeals].” Senate Revenue, Fin. & Appropriations Comm., Statement, Assembly Bill 2147, Leg.Sess. of 1977.
Chapter 361 took effect “for purposes of the tax year next following enactment and thereafter.” L.1975, c. 361, § 4. The enactment date was March 3, 1976, and, therefore, the legislation was effective in 1977. L.1977, c. 357 (“Chapter 357”), introduced as Assembly Bill 2147 on July 22,1976 (less than five months after Chapter 361 was enacted and before Chapter 361 became effective) and enacted on January 31, 1978, further amended N.J.S.A 54:3-27 to correct the reference in the first paragraph from “Tax Appeal Board” to “county board of taxation” and to change the payment requirement from “90% of the taxes assessed against him” to “the first three quarters of the taxes assessed against him for the current tax year”. In another instance of legislative oversight, a reference to the then non-existent “State Board of Tax Appeals” was not changed in the second paragraph of N.J.S.A. 54:3-27. L.1977, c. 357, § 1.
Chapter 357 also amended N.J.S.A 54:2-39 to impose, for the first time, a specific tax payment requirement in connection with appeals from county boards of taxation to the Division of Tax Appeals.
At the time that a petition of appeal has been filed with the Division of Tax Appeals, all taxes for the current tax year must have been paid and the appellant at such time shall present evidence of such payment.
Finally, Chapter 357 contained a new provision, codified as N.J.S.A. 54:3-27.3, granting a specific exemption from the tax payment requirements of N.J.S.A 54:3-27 and 54:2-39.
Class 3B (Farm Qualified) and Class 15D, E and F (Exempt Property) in appeal where a statutory qualification is the subject of the appeal are exempt from those provisions contained in R.S. 54:3-27 and R.S. 54:2-39.
*446 The Sponsor’s Statement to A-2147 and the Senate Revenue, Finance and Appropriations Committee Statement do not mention the quoted exemption provision, and focus on the change in the tax payment requirements effected by the Act.
Reviewing the statutory history thus far reveals that, from 1918 through 1976, an organization claiming exemption was not required to pay any taxes in order to prosecute an appeal seeking such exemption to a county board of taxation (the only forum for an initial appeal until the Tax Court was established effective July 1, 1979) or to prosecute an appeal from a county board to the Division of Tax Appeals and its predecessors. The tax payment requirement imposed by Chapter 361 applied only in 1977 in connection with appeals filed to county boards of taxation, and, by January 31, 1978, that payment requirement was eliminated by N.J.S.A 54:3-27.3, (§ 4 of Chapter 357) which, as A-2147, was introduced within less than five months from the date of enactment of Chapter 361 and before Chapter 361 became effective.
N.J.S.A 54:3-27 and 54:3-27.3 were unchanged by L.1978, c. 33 (“Chapter 33”) which created the Tax Court, and by L.1979, c. 114 (“Chapter 114”) and L.1979, c. 499 (“Chapter 499”), which amended various other provisions of Title 54. N.J.S.A. 54:2-39 was unaffected by Chapter 33, but both Chapter 114 and Chapter 499 amended the portion of N.J.S.A 54:2-39 quoted above to read as follows:
At the time that a complaint has been filed with the tax court, all taxes or any installments thereof then due and payable for the year for which review is sought must have been paid.
The enactment of L.1983, c. 36 (“Chapter 36”) and L.1983, c. 45 (“Chapter 45”) is the next development in the statutory saga. These statutes were introduced simultaneously as companion bills by the same sponsor. Compare Assembly Bill 498, Leg.Sess. of 1982 and Assembly Bill 544, Leg.Sess. of 1982. Chapter 36 (A-498) and Chapter 45 (A-544) were both approved by the Assembly on June 28, 1982 and by the Senate on November 29, 1982. Chapter 36 was signed by the Governor on January 26, 1983 and Chapter 45 was signed on January 28,1983.
*447 An analysis of the substance of A-498 and A-544 and the Sponsor and Committee Statements appended to each, reveals that the purpose of Chapter 36 (A-498) was to make technical amendments to a variety of statutes to include proper references to the Tax Court and delete references to the Division of Tax Appeals. Chapter 45 (A-544) complemented Chapter 36 by enacting, as Chapter 51A of Title 54, provisions relating solely to practice and procedure in the Tax Court. Consistent with their complementary function, Chapter 36 amended N.J.S.A. 54:3-27.3 so as to delete the reference therein to N.J.S.A. 54:2-39 which was repealed by Chapter 45.
In addition to repealing N.J.S.A. 54:2-39, Chapter 45 repealed other portions of Chapter 2 of Title 54 which were not repealed by Chapter 114, Chapter 499 or Chapter 36, and which Chapter 45 simultaneously enacted as part of Chapter 51A of Title 54. Included in the Chapter 45 Repealer provision, L.1983, c. 45, § 3, was N.J.S.A. 54:3-27.3, the same statute which was amended by Chapter 36.
The Sponsor and Committee Statements to Chapter 36 and Chapter 45 make no mention of the amendment to, or repeal of, N.J.S.A. 54:3-27.3. Chapter 45 on its face, therefore, changed, without comment and apparently without notice, a statutory scheme which, for sixty-five consecutive years (with the exception of 1977 as discussed above), did not require payment of taxes as a prerequisite to an exemption appeal.
The confusion created by the amendment (in Chapter 36) and repeal (in Chapter 45) of N.J.S.A. 54:3-27.3 is the heart of the issue before me, and eliminating that confusion is the key to deciding defendant’s motion. The easy solution is to treat as binding upon me the repeal by Chapter 45, the technically later (by two days) enactment, but I regard the two day difference between the Governor’s signing of Chapter 36 and Chapter 45 to be meaningless in light of the contemporaneous path followed by A-498 and A-544 and in light of the obviously complementary purpose of the two bills. Furthermore, the statutory history prior to Chapters 36 and 45 makes singularly troublesome simple *448 acceptance of legislative alteration of long-standing statutory policy in a seemingly off-hand manner. To disregard the express repealer in, Chapter 45, however, and, in effect, re-enact N.J.S.A 54:3-27.3 as amended by Chapter 36 involves a step significantly beyond ordinary interpretation of statutory language, a step that requires support in the decisional law. .
There is precedent for court correction of obvious drafting errors by the legislature, even when to do so requires the enforcement of an expressly repealed statute. Kaczorowski v. Mayor & City Council of Baltimore, 309 Md. 505, 525 A.2d 628 (1987) is almost directly on point. The essential portions of the complicated facts before the Maryland court are the following. In 1976 the Maryland Legislature enacted legislation which permitted counties and municipal corporations to form industrial development authorities having the power to issue revenue bonds. In 1979, the Baltimore Industrial Development Authority (the “Baltimore Authority”) was created pursuant to the 1976 statutes.
In 1982 the Legislature enacted legislation which duplicated and supplemented the 1976 statutes. The 1982 legislation was intended to repeal the pre-existing duplicate provisions, and, as a result, contained a savings clause which validated the continued existence of industrial development authorities existing on June 30, 1982. This savings clause was unnecessary and meaningless because, by inadvertence, the provisions repealing the duplicate 1976 statutes were omitted from the 1982 legislation.
In 1983, the Maryland Legislature, apparently realizing that it had enacted duplicate legislation, repealed the 1976 statutes under which the Baltimore Authority was formed, thus retaining the virtually identical statutes enacted in 1982. The 1983 legislation contained a savings clause which ratified “the validity of all loans made and bonds heretofore issued” pursuant to the repealed statutes. Kaczorowski, supra, 525 A.2d at 630.
In 1986 the City of Baltimore amended the charter of the Baltimore Authority in conformity with the 1982 legislation, and the Authority issued $100,000,000 in revenue bonds.
*449 The plaintiff sought a declaratory judgment that: (1) the 1986 charter amendments were ineffective because the Baltimore Authority was rendered defunct by the 1988 legislation; and (2) because the savings clause in the 1983 legislation applied only to “bonds heretofore issued”, the 1986 bonds were invalid.
After noting the difficulties created by the canons of legislative construction (“Just as in the science of Physics every action has an equal and opposite reaction, so it seems that every canon of statutory construction has an equal and opposite canon.” Kaczorowski 525 A.2d at 631), the Maryland Court of Appeals held that, in interpreting legislation, it was necessary to consider the title and function of the legislation, its context, “its relationship to earlier and subsequent legislation and other material that fairly bears on the fundamental issue of legislative purpose or goal____ The purpose, in short, determined in light of the statute’s context, is the key.” Id. at 632-33.
The court then held that the purpose of the 1982 legislation was to provide a mechanism for the issuance of bonds to encourage industrial development. The purpose of the 1983 legislation was to correct duplication in the 1982 law. Neither statute had as its purpose “to do away with existing industrial development authorities”. Id. at 63h. To assume that either statute had the purpose of abolishing the Baltimore Authority and invalidating its bonds “is indeed to assume an absurdity, and a result totally at odds with the objective of enhancing the effectiveness of the Bond Act.” Ibid. The court concluded that, notwithstanding the express repealer in 1983 of the statutory basis for the Baltimore Authority, the Authority survived and was covered by the savings clause contained in the 1982 legislation. Id. at 635.
The parallels between the Kaczorowski facts and the facts before me are striking. Here two contemporaneous statutes are in conflict, while in Kaczorowski the conflicting statutes were enacted one year apart. Here Chapter 45 repealed a statute that Chapter 36 simply amended, just as the Maryland Legislature in 1983 repealed statutes creating industrial development authorities which 1982 legislation retained and the existence of which the 1982 *450 legislation protected by a savings clause. The Maryland Court of Appeals disregarded the 1983 repealer, and enforced a savings clause contained in 1982 legislation. If I disregard the repeal of N.J.S.A. 54:3-27.3 in Chapter 45,1 could then enforce the amendment to this statute contained in Chapter 36.
Other courts have exercised their discretion to correct so called “scriveners’ errors.” In United States Nat’l Bank of Or. v. Insurance Agents, 508 U.S. 439, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993), Justice Souter, without dissent, changed the punctuation, and meaning, of a statute relating to the rights of national banks to write insurance.
In this unusual case, we are convinced that the placement of the quotation marks in the 1916 Act was a simple scrivener’s error, a mistake made by someone unfamiliar with the law’s object and design.
[United States Nat’l Bank, 508 U.S. at 462, 113 S.Ct at 2186, 124 L.Ed.2d at 422.]
In Wellman v. Bergmann, 44 N.J.L. 613 (Sup.Ct.1882), the court, in effect, deleted language from a statute relating to the geographical scope of the jurisdiction of district courts.
I know the extreme reluctance with which courts change words found in a statute, but where it becomes necessary, in a case like this, that it should be done, ut res magis valeat quam pereat, they have not failed to do what the legislature obviously intended to do, and to give effect to their purpose; they have not allowed the mere error of a copyist to annul a beneficial statute. This is not guessing at legislative intention, in opposition to the words they have used, but giving effect to a purpose so manifest that no one can doubt it.
[Id. at 616.]
Wellman v. Bergmann was followed in Mitsch v. Owens, 82 N.J.Eq. 404, 89 A.292 (Ch. 1913) where the court excised two words from a statute, thereby significantly changing its meaning, on the grounds that “a slip of the draftsman’s pen will not be permitted to annul or vary an intended beneficial provision in a statute.” Id. at 408.
Based upon the foregoing analysis of the statutory history and context and based upon the foregoing legal authorities, I find that the repeal of N.J.S.A 54:3-27.3 effected by Chapter 45 resulted from a scrivener’s error, a copyist’s error, a slip of the draftsman’s pen, or, most likely, from simple oversight and unfa *451 miliarity with the over-all statutory structure. Specifically, the repeal probably occurred because: (i) N.J.S.A 54:3-27.3 contained a reference to N.J.S.A 54:2-39 which Chapter 45 repealed and replaced with N.J.S.A 54:51A-l(b); and (ii) Chapter 45 enacted N.J.S.A. 54:51A-3 which was identical in content to N.J.S.A 54:3-27.3 except that N.J.S.A 54:51A-3 referred to N.J.S.A 54:51A-1(b) in place of the repealed N.J.S.A. 54:2-39 and N.J.S.A 54:51A-3 omitted any reference to N.J.S.A. 54:3-27. The significance of this omission apparently escaped notice.
The historical evolution of Chapters 36 and 45, and the facts and circumstances surrounding the enactment of both Chapters, compellingly, indeed overwhelmingly, demonstrate that requiring an organization seeking exemption to pay taxes as a condition to pursuing an appeal before either a county board of taxation or the Tax Court was not the purpose, goal, or intention of that legislation. The repeal of N.J.S.A. 54:3-27.3 in Chapter 45 should, therefore, be disregarded and the amendment effected by Chapter 36 treated as the operative legislative event.
There is one further component of the statutory structure and evolution which must be considered before concluding my statutory analysis. That component is L.1991, c. 75 (“Chapter 75”) which accomplished significant substantive changes in the statutes relating to municipal finance and local property tax appeals. One statute that was particularly affected was N.J.S.A. 54:3-27.
Prior to Chapter 75, N.J.S.A 54:3-27 required, as a jurisdictional prerequisite to the filing of an appeal with a county board of taxation or directly to the Tax Court, the payment of three quarters of the taxes due for the current year. This requirement related to an appeal filing deadline of August 15. Chapter 75 changed the filing deadline from August 15 to April 1 and amended the provisions of N.J.S.A 54:3-27 to require, as a jurisdictional prerequisite, the payment of municipal charges in addition to real estate taxes and payment of all taxes and municipal charges due “up to and including” the first quarter of the current year.
*452 Can my interpretation of the Chapters 36 and 45, as amending and not repealing N.J.S.A 54:3-27.3, survive the significant substantive changes effected by Chapter 75? I find that it can.
The case law is clear that the Legislature is presumed to be aware of existing legislation. Mahwah Tp. v. Bergen County Bd. of Taxation, 98 N.J. 268, 279, 486 A2d 818 (1985), cert. denied, 471 U.S. 1136, 105 S.Ct. 2677, 86 L.Ed.2d 696 (1985). If this presumption extends to an awareness of the absence of legislation, then enactment of Chapter 75 without including a provision containing the substance of the repealed N.J.SA 54:3-27.3 would constitute an implied ratification by the Legislature of the imposition of the tax payment requirements of N.J.S.A 54:3-27 on organizations seeking tax exemptions. It seems, however, both unwise and unrealistic to hold that, in amending a statute, the Legislature, by its silence, impliedly acts with respect to all then existing areas of confusion or controversy, latent or patent. Legislative silence has been characterized as a “weak reed upon which to lean and a poor beacon to follow in construing a statute.” Amerada Hess Corp. v. Director, Div. of Taxation, 107 N.J. 307, 322, 526 A.2d 1029 (1987), aff'd, 490 U.S. 66, 109 S.Ct. 1617, 104 L.Ed.2d 58 (1989) (citation omitted). Justice Scalia, dissenting in Johnson v. Transportation Agency, Santa Clara County, 480 U.S. 616, 107 S.Ct. 1442, 94 L.Ed.2d 615 (1987), commented that, in evaluating congressional silence, it is:
impossible to assert with any degree of assurance that congressional failure to act represents (1) approval of the status quo, as opposed to (2) inability to agree upon how to alter the status quo, (3) unawareness of the status quo, (4) indifference to the status quo, or even (5) political cowardice.
[Johnson, 480 U.S. at 672, 107 S.Ct at 1472, 94 L.Ed.2d at 656 [quoted in Amerada Hess Corp., supra, 107 N.J. at 323,526 A.2d 1029) ]
An examination of the purpose, intent, and context of Chapter 75 is required.
The primary purpose and intent of Chapter 75, as evidenced by the Sponsor’s Statement and Committee Statements attached to Assembly Bill 4425, was to require or permit municipalities to operate on the State fiscal year.
*453 The bill accomplishes the change to the State fiscal year by revising a number of statutes that regulate municipal budgets, property tax billing, tax appeals and municipal bonding.
Assembly Mun-Gov’t Comm., Statement Assembly Bill 4425, Leg.Sess. of 1991; see also, Sponsor’s Statement, Assembly Bill 4425, Leg.Sess. of 1991.
Each Statement describes the changes in the tax appeal system effected by the Bill in the context of insuring that appeals are based on assessments not on the amount of taxes payable. The Statements contain no mention of the amendments to N.J.S.A. 54:3-27 and no mention of, or reference to, the confusion created by Chapters 36 and 45 with respect to N.J.SA 54:3-27.3. To assume that the Legislature was aware of this confusion and, by its silence, ratified the repealer of N.J.S.A 54:3-27.3 in Chapter 45 is to adopt a pure legal fiction. No reported court decisions between 1983 and 1991 considered the issue, thus the general principle that the Legislature is presumed to be “familiar with existing judicial statutory interpretations,” Chase Manhattan Bank v. Josephson, supra, 135 N.J. at 227, 638 A.2d 1301 is inapplicable. The only material which might have alerted the Legislature was an Attorney General’s Opinion rendered in 1985 which concluded that the repealer of N.J.S.A 54:3-27.3 by Chapter 45 was inadvertent. Informal Op.N.J.Att’y Gen., Financial Section, Sept. 17, 1985. To assume that the Legislature, by its silence, adopted this Opinion would simply be to adopt another legal fiction.
One could speculate that the Legislature refused in Chapter 75 to re-enact N.J.SA 54:3-27.3, or enact a similar provision, because the Legislature did not wish to excuse an organization prosecuting an exemption appeal from payment of taxes that will be due even if the exemption is granted. N.J.S.A. 54:3-27, as amended by Chapter 75, requires payment of taxes and municipal charges due for the first quarter of the year of appeal and for all years prior to the year of appeal. Even if an exemption is granted for the year of appeal, prior years’ taxes and municipal charges will remain payable. N.J.S.A. 54:51A-l(b) requires payment of only current year’s taxes. N.J.S.A. 54:51A-3, therefore, excuses payment only of taxes which will never be payable if the exemption is granted.
*454 The error of attributing such motivation or intention to the Legislature is demonstrated by the Legislature’s failure to address in Chapter 75 the conflict between N.J.S.A. 54:3-27, on the one hand, and N.J.S.A 54:51A-1(b) and N.J.S.A 54:51A-3, on the other, as to payment of taxes due for the first quarter of the year for which exemption is sought. N.J.S.A 54:3-27 requires an organization seeking a tax exemption to pay such installment as a prerequisite to filing an appeal to a county board of taxation or a direct appeal to the Tax Court. N.J.S.A 54:51A-l(b) requires the same payment in connection with an appeal from a county board to the Tax Court. N.J.SA 54:51A-3 excuses only the payment required by N.J.S.A 54:51A-1(b). As a consequence, a county board of taxation’s dismissal of an appeal seeking a tax exemption for tax year 1995 would be proper under N.J.S.A 54:3-27 if the tax installment due for the first quarter of 1995 is unpaid. Under Bllum Ltd. Partnership v. Bloomfield Tp., 15 N.J.Tax 409 (Tax 1995), dismissal by the Tax Court of an appeal to it from the county board would be warranted, based upon the county board dismissal, even though N.J.S.A. 54:51A-3 grants an express dispensation from the same payment requirement as imposed by N.J.S.A 54:51A-1(b). Surely the Legislature would have dealt with this direct statutory conflict and resulting confusion if, in enacting Chapter 75, the Legislature had considered the appropriate tax payment prerequisites to be imposed in connection with appeals seeking tax exemption.
The reality is that the repeal of N.J.S.A 54:3-27.3 by Chapter 45 in 1983 and the impact of this repeal on organizations seeking tax exemption were not considered by the Legislature when Chapter 75 was enacted. Reality and not fiction should control.
In cases such as this, where it is clear that the drafters of a statute did not consider or even contemplate a specific situation, this Court has adopted as an established rule of statutory construction the policy of interpreting the statute “consonant with the probable intent of the draftsman ‘had he anticipated the situation at hand.’ ” Such an interpretation will not "turn on literalisms, technisms or the so-called rules of interpretation; [rather] it will justly turn on the breadth of the objectives of the legislation and the commonsense of the situation.”
[AMN, Inc. v. South Brunswick Tp. Rent Leveling Bd., 93 N.J. 518, 525, 461 A.2d 1138 (1983) (alteration in original) (citations omitted).]
*455 The enactment of Chapter 75 does not, based on the preceding analysis, require a change in my conclusion that Chapters 36 and 45, when properly interpreted, effected the amendment and not the repeal of N.J.S.A. 54:3-27.3. N.J.S.A. 54:3-27.3, as so amended, reads as follows:
Class 3B (Farm Qualified) and Class 15D, E and F (Exempt Property) in appeal where a statutory qualification is the subject of the appeal are exempt from those provisions contained in R.S. 54:3-27.
Accordingly, an organization seeking a tax exemption for Class 3B or Class 15D, E or F property is not required to satisfy the tax payment provisions of N.J.S.A. 54:3-27 in order to pursue an appeal to a county board of taxation or a direct appeal to the Tax Court.
The dismissal of plaintiffs appeal by the Sussex County Board of Taxation was improper, and defendant’s motion to dismiss is denied.

 Class 15F property is "real property exempt from taxation but not described in any of the foregoing classes.” Class 15D property is "real property owned by religious and charitable organizations actually and exclusively used in the work of the organizations,” and Class 15E property is "real property solely devoted to or held for use as a cemetery, graveyard or burial ground.” N.J.A.C. 18:12-2.2(p), (q) & (r).