NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3541-23

LENTO LAW GROUP, PC,

      Plaintiff-Appellant,

v.

CARLY HENDRICKSON,

      Defendant-Respondent.

_____

> **APPROVED FOR PUBLICATION**
> **June 15, 2026**
> **APPELLATE DIVISION**

Argued January 13, 2026 – Decided June 15, 2026

Before Judges Sumners, Chase and Augostini.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-0668-24.

Lawrence A. Katz argued the cause for appellant (Lento Law Group, PC, attorneys; Lawrence A. Katz, on the brief).

Bruce S. Rosen argued the cause for respondent (Pashman Stein Walder Hayden, PC, attorneys; Bruce S. Rosen and Doris Cheung, on the brief).

James Harry Oliverio argued the cause for amicus curiae American Civil Liberties Union of New Jersey (Anselmi & Carvelli, LLP and American Civil Liberties Union of New Jersey, attorneys; Zachary D. Wellbrock, James Harry Oliverio, Jeanne LoCicero and Ezra D. Rosenberg, on the brief).

Matthew Singer (Reporters Committee for Freedom of the Press) of the New York and District of Columbia bars, admitted pro hac vice, argued the cause for amicus curiae Reporters Committee for Freedom of the Press, New Jersey Press Association and News/Media Alliance (Ballard Spahr, LLP, Matthew Singer, and Mara Gassmann, (Reporters Committee for Freedom of the Press) of the Virginia and District of Columbia bars, admitted pro hac vice, attorneys; Elizabeth Seidlin-Bernstein, Matthew Singer, Bruce D. Brown, and Mara Gassmann, of counsel and on the brief).

The opinion of the court was delivered by

SUMNERS, JR., C.J.A.D.

This appeal requires us to interpret the Uniform Public Expression Protection Act (UPEPA or Act), N.J.S.A. 2A:53A-49 to -61, which allows persons sued for defamation to seek prompt dismissal of meritless lawsuits intended to chill their constitutionally protected free speech. Applying UPEPA, the motion judge dismissed plaintiff Lento Law Group, PC's (Lento Law or the law firm) lawsuit against its former client, defendant Carly Hendrickson, alleging defamation and tortious interference with prospective economic advantage. Hendrickson posted unfavorable comments on the Better Business Bureau (BBB) website about their non-refundable retainer policy. The judge also awarded Hendrickson attorney's fees and court costs.

Lento Law solely appeals the dismissal of its defamation claim, arguing the judge: (1) misinterpreted UPEPA by applying the Rule 4:6-2(e) motion to dismiss for failure to state a cause of action upon which relief can be granted standard instead of the Rule 4:46 summary judgment standard; and (2) incorrectly ruled the social media posts were not defamatory.

We conclude that the plain language of UPEPA authorizes the motion judge to apply the motion to dismiss standard and does not require application of the summary judgment standard. Moreover, in applying the Act, the judge correctly determined that the social media posts were a matter of public concern and that the Lento Law's pleadings failed to establish a prima facie case of defamation because the posts were opinions and, thus, non-actionable.

I.

The Social Media Post

On July 12, 2023, Hendrickson paid Lento Law a $5,000 retainer and executed a "letter set[ting] forth the terms and scope of" an agreement with the law firm to represent her in a legal matter.[1] After the matter was promptly

---

[1] Lento Law's complaint stated: "In the interest of maintaining confidentiality to the fullest extent possible, the specific type of matter that [] Hendrickson sought representation in connection with, is not relevant for purposes of this action."

settled, Hendrickson requested a partial refund of her retainer.  Lento Law

declined the request, citing a provision of the retainer agreement stating:

> As the Lento Law Firm is allocating resources to a client's case and is foregoing other available opportunities, the Lento Law Firm requires a non-refundable fee to proceed with representation.  Per our standard practice, <u>a reduced non-refundable fee of $5,000.00</u> will go towards the attorney fees which must be paid at the beginning of our representation.

In response, on August 13, Hendrickson posted a "one star" review of

Lento Law on the BBB website with the following comment:

> Total rip off.  If you have an issue that you know has the chance to be settled before even hiring a law firm, I don't recommend this firm.  Knowing we were going into settlement they took $5[,]000.00[.] With that being said every other law firm takes the full retainer respectfully but whatever is not used they return to you especially when knowing you are going to settle vs go to trial.  You can get a lawyer that will settle with the other party for a lot cheaper!  Probably good lawyers but if you are tight on money and know you will be settling go with a firm that does not take a full retainer and tell you to kick rocks afterwards.  Especially if it is a matter happening in your life that had catastrophic events to follow, don't get taken advantage of when your emotions are all over the place.  Had I known this was how this firm operates I would have definitely gone with someone else and saved myself the headache of wondering how this firm believes this to be acceptable.

<u>Lento Law's Lawsuit and its Dismissal</u>

4

On March 29, 2024, Lento Law sued Hendrickson, alleging her BBB post constituted defamation and tortious interference with prospective economic advantage. In response, Hendrickson filed an order to show cause (OTSC), asserting her post was immune from liability under UPEPA, the suit should be dismissed, and she is entitled to attorney's fees and costs. The application included her counsel's certification, which attached a news article indicating Lento Law had previously sued clients over negative reviews. The motion judge issued an order on May 3, directing the parties to submit briefs regarding whether the lawsuit should be dismissed under UPEPA and, if so, whether Hendrickson is entitled to attorney's fees and costs. A return date was set for oral argument.

On June 7, after oral argument, the motion judge issued a bench decision and an order dismissing both claims.[2] The judge determined that Hendrickson's post on the BBB website regarding "lawyer behavior are . . . matters of public concern" because online reviews, such as those on the BBB website post, are the "equivalent [of] the public square right now." The judge noted that UPEPA applied because under federal and state constitutional free speech rights, a "matter of public concern is to be broadly defined."

---

[2] On June 13, the judge entered an amended order to correct a clerical error.

The judge next found that Lento Law "has not set forth a prima facie case . . . [of] defamation." The judge acknowledged an "alternative argument" could be made that the law firm, due to "it[s] prominent place in the public square," is a "limited public figure." However, the judge added that "if [such] were the case, clearly [] Hendrickson's comments would fall . . . far short of . . . actual malice . . . ." However, the judge maintained it was unnecessary to reach that point, because Hendrickson was simply "expressing her opinion as a dissatisfied client." The judge stressed that Hendrickson did not accuse Lento Law of doing anything illegal but merely stated she did not "like the way that they treated her." The judge found that it was not a matter of whether she was legally entitled to a partial refund of the retainer, but that she was expressing "her subjective feelings that . . . she felt she should've gotten some kind of discount" after her legal dispute was quickly resolved.

The judge determined that, given his finding that Hendrickson's post was "free speech," allowing Lento Law's action to proceed would "have a chilling effect" on free speech and be "antithetical to the purpose of [UPEPA]." As such, the judge held that the Act applies, and Lento Law failed to make a prima facie case of defamation.

A-3541-23

On July 2, after considering Hendrickson's application for attorney's fees and costs and Lento Law's opposition, the motion judge entered a final order, along with a statement of reasons, awarding her attorney's fees totaling $24,198 and $199.83 in court costs, and reaffirmed dismissal of the complaint with prejudice. The appeal of the dismissal of the complaint followed.[3]

## II.

### UPEPA

In 2023, our Legislature passed UPEPA, commonly referred to as Anti-SLAPP (strategic lawsuits against public participation), to "protect residents against frivolous, ill-intentioned lawsuits and insulate them from the financial hardships these cases can produce." Satz v. Starr, 482 N.J. Super. 55, 65 (App. Div. 2025) (quoting Press Release, Off. of the Governor, Governor Murphy Signs Bipartisan Bill Protecting Against Lawsuits Designed to Suppress Free

---

[3] Lento Law's merits brief asserts "the counsel fee provisions of the anti-SLAPP laws often serve to deter deserving victims from pursuing legitimate lawsuits to recover damages for the defamatory injuries they sustain." Because no legal arguments are made challenging the award of attorney's fees and costs to Hendrickson, we do not address the assertion. See Petro v. Platkin, 472 N.J. Super. 536, 567 (App. Div. 2022) ("An issue that is not briefed is deemed waived upon appeal.") (quoting N.J. Dep't of Env't Prot. v. Alloway Twp., 438 N.J. Super. 501, 505 n.2 (App. Div. 2015)).

A-3541-23

Speech, at 1 (Sept. 7, 2023))[4].  The Legislature directed that UPEPA be construed "broadly . . . to protect the exercise of the right of freedom of speech and of the press, the right to assembly and petition, and the right of association, guaranteed by the United States Constitution or the New Jersey Constitution." N.J.S.A. 2A:53A-59.

Relevantly, UPEPA applies when a person is civilly sued for the "exercise of the right of freedom of speech or of the press, the right to assembly or petition, or the right of association, guaranteed by the United States Constitution or the New Jersey Constitution, on a matter of public concern."  N.J.S.A. 2A:53A-50(b)(3).  The Act provides a court-expedited two-step process to review the lawsuit's merits and, if appropriate, award reasonable attorney's fees and costs. N.J.S.A. 2A:53A-55, -58.  First, upon the filing of an OTSC application to dismiss the lawsuit with prejudice within sixty days of service, the motion judge must decide whether UPEPA applies.  N.J.S.A. 2A:53A-51, -55(a); see also Wunsch v. CTE Republicans for Englewood Cliffs, 483 N.J. Super. 231, 246 (App. Div. 2026) (citing Satz, 482 N.J. Super. at 64).  Second, if the judge

---

[4]  https://www.nj.gov/governor/news/news/562023/20230907d.shtml .

determines UPEPA applies, N.J.S.A. 2A:53A-55(a)(3) requires the judge dismiss the cause of action with prejudice if either:

> (a) the responding party fails to establish a prima facie case as to each essential element of any cause of action in the complaint; or
> (b) the moving party establishes that:
>> (i) the responding party failed to state a cause of action upon which relief can be granted; or
>> (ii) there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the cause of action or part of the cause of action.
>
> [(Emphasis added).]

To determine whether the lawsuit should proceed, "the court may consider the pleadings, the [OTSC] application and supporting certifications, briefs, any reply or response to the [OTSC], and any evidence that could be considered in ruling on a motion for summary judgment" under Rule 4:46-2, Wunsch, 483 N.J. Super. at 246, and may also allow limited discovery in certain circumstances. N.J.S.A. 2A:53A-52(d), -54. Reasonable attorney's fees and court costs may be awarded to "the moving party [who] prevails on the [OTSC]." N.J.S.A. 2A:53A-58.

Dismissal Standard

Lento Law contends the motion judge erred in dismissing its defamation claim because UPEPA does not bar its rights to redress the injury it suffered from Hendrickson's defamatory social media post. The law firm argues the Act was not intended to transfer the jury's function of deciding defamation defenses to a motion judge during the pleading stage prior to discovery. In short, Lento Law contends that the judge's ruling is procedurally flawed because it misapplied UPEPA by failing to interpret Hendrickson's "[a]lleged [d]efamatory [s]tatement [i]n [t]he [l]ight [m]ost [f]avorable [t]o . . . [it], [t]he [n]on-[m]oving [p]arty," under the summary judgment standard. Lento Law cites published and unpublished opinions from other states to support its position that the summary judgment standard should be applied. The argument lacks merit because it contradicts the plain language of UPEPA. See Keyworth v. CareOne at Madison Ave., 258 N.J. 359, 380 (2024) (internal quotation marks omitted) (holding that courts apply the law "as written" when the "text's plain meaning is clear and unambiguous").

As noted, if UPEPA applies, the statutory text clearly demonstrates a complaint may be dismissed through a summary judgment motion or a motion to dismiss standard. See Town of Dover v. Richard Gonzalez, ___ N.J. Super. ___, ___ (App. Div. 2026) (slip op. at 19) ("[A] plain reading of [N.J.S.A.

10

2A:53A-55(a)(3)(b)(i)] requires the court to apply the Rule 4:6-2(e) standard . . . ."). We thus conclude the motion judge's consideration of Hendrickson's motion to dismiss Lento Law's complaint under Rule 4:6-2(e) did not run afoul of UPEPA. Lento Law's reliance on published opinions and an unpublished opinion from other states to support its position that only the summary judgment standard should be applied is misguided. Given that UPEPA unambiguously authorizes the dismissal of Lento Law's complaint under the motion to dismiss standard we need not discuss those opinions; and moreover, unpublished opinions do not constitute precedent or bind us. See R. 1:36-3; Badiali v. N.J. Mfrs. Ins. Grp., 220 N.J. 544, 559 (2015) (reaffirming the dictate of Rule 1:36-3).

We further conclude there is no merit to Lento Law's argument that UPEPA was not intended to transfer the jury's function of deciding defamation defenses to a motion judge during the pleading stage prior to discovery. Our Legislature, based on its collective wisdom, has exercised its constitutional duty by enacting UPEPA to thwart the weaponization of litigation to curb free speech rights in our state in a prompt and cost-effective manner. See Est. of Burnsex rel. Burns v. Care One at Stanwick, LLC, 468 N.J. Super. 306, 319 (App. Div. 2021) (quoting Brewer v. Porch, 53 N.J. 167, 174 (1969)) ("When considering

11

the meaning of legislation, we assume the Legislature is 'thoroughly conversant with its own legislation and the judicial construction of its statutes.'"); Chase Manhattan Bank v. Josephson, 135 N.J. 209, 227 (1994) (recognizing that a court may presume that the Legislature is familiar with existing judicial construction of legislative enactments). As Hendrickson and amici American Civil Liberties Union of New Jersey (ACLU) and Reporters Committee for Freedom of the Press, New Jersey Press Association, and News/Media Alliance Reporters Committee for Freedom of the Press (collectively Press) maintain, UPEPA's authorization of the Rule 4:6-2(e) standard to dismiss Lento Law's complaint furthers the Act's purpose to promptly resolve and protect free speech rights that are at stake in SLAPP actions. See N.J.S.A. 2A:53A-50(b).

III.

Dismissal of Complaint

Applying the de novo standard, we now review the motion judge's dismissal of Lento Law's complaint. See Wunsch, 483 N.J. Super. at 245 (citing In re H.D., 241 N.J. 412, 418 (2020)) (considering the parties' UPEPA arguments involving statutory interpretation de novo).

In deciding a motion to dismiss, we afford no deference to the motion judge's findings. State v. Cherry Hill Mitsubishi, Inc., 439 N.J. Super. 462, 467

12

(App. Div. 2015) (citing Rezem Fam. Assocs., LP v. Borough of Millstone, 423 N.J. Super. 103, 114 (App. Div. 2011)).  We limit "our inquiry . . . to examining the legal sufficiency of the facts alleged on the face of the complaint."  Green v. Morgan Props., 215 N.J. 431, 451 (2013) (quoting Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 746 (1989)).  "The essential test is simply 'whether a cause of action is suggested by the facts.'"  Ibid. (quoting Printing Mart-Morristown, 116 N.J. at 746).  We "'search[] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary.'"  Id. at 452 (quoting Printing Mart-Morristown, 116 N.J. at 746).  "In considering a motion under Rule 4:6-2(e), courts must accept the facts asserted in the complaint and should accord the plaintiff all favorable inferences."  Herman v. Muhammad, 480 N.J. Super. 480, 491 (App. Div. 2024).  Even so, dismissal is required "where the pleading does not establish a colorable claim and discovery would not develop one."  Cherry Hill Mitsubishi, Inc., 439 N.J. Super. at 467.

There is no dispute that UPEPA applies to Hendrickson's social media post because it was a matter of public concern.  As the motion judge ruled, under the "broad" application of UPEPA, N.J.S.A. 2A:53A-59, Hendrickson's BBB

website post regarding Lento Law's retainer policy was akin to expressing her constitutionally protected free speech rights in "the public square."  The question is whether her post was defamatory, which would not be protected under UPEPA.

Lento Law argues the motion judge erred in finding that Hendrickson's social media post was not defamatory.  It claims the following comments in her post were defamatory statements of fact:  (1) "every other law firm takes the full retainer respectfully[,] but whatever is not used they return to you"; and (2) "[h]ad [defendant] known this was how this firm operates [she] would have definitely have gone with someone else."  Lento Law asserts these statements were not Hendrickson's opinion, as she "blatant[ly] lie[d]" by directly attacking its reputation and implying it "hid, mis[led], tricked, or otherwise misrepresented the [retainer] fee agreement to her."  In addition, the law firm argues that Hendrickson's false statement was made with actual malice as set forth in N.Y. Times Co. v. Sullivan, 376 U.S. 254, 280 (1964), because she "knew the fee she paid the firm was non-refundable" and that her claim of "not know[ing] the fee was non-refundable was a lie."

Hendrickson counters that Lento Law failed to plead a prima facie case of defamation.  She contends the judge correctly determined that her post was her

A-3541-23

subjective opinion reflecting her dissatisfaction with Lento Law and did not allege the law firm acted illegally or unethically. She stresses that her "opinion, as a matter of constitutional law, enjoys absolute immunity." Dairy Stores Inc. v. Sentinel Pub. Co., 104 N.J. 125, 147 (1986). She adds that "the [p]ost was not made in vitriolic battle[;] it is indisputable that its context was a critical review—on a website that was filled with critical reviews by nature—and that a feeling of aggrievement is evident." Hendrickson also contends her BBB post was a matter of public concern regarding the law firm's billing policy, and there is no indication that it was made with actual malice or reckless disregard of the truth.

Amici support Hendrickson's position that the motion judge's dismissal of Lento Law's complaint furthers UPEPA's goal of eradicating lawsuits that seek to stifle freedom of expression. The ACLU stresses that the Act is consistent with our state constitution by "provid[ing] neutral procedural mechanisms to ensure that constitutional protections [of free speech] are not circumvented by costly litigation." It contends UPEPA applies as Hendrickson's social media post advances a matter of public concern—valued consumer information—and does not further her own "economic interests." See Senna v. Florimont, 196 N.J. 469, 495-96 (2008). The ACLU also argues the complaint fails to set forth a

prima facie case of defamation because it does not allege a factual basis that Hendrickson's post, which was her opinion, was made with actual malice. See Neuwirth v. State, 476 N.J. Super. 377, 390-91 (App. Div. 2023). The Press emphasizes that UPEPA was enacted to allow individuals in New Jersey to publicly express their opinions without the threat of meritless defamation suits.

"Whether [a] statement is susceptible of a defamatory meaning is a question of law for the court." Wunsch, 483 N.J. Super. at 252 (quoting DeAngelis v. Hill, 180 N.J. 1, 14 (2004)). A prima facie case of defamation is established by satisfying a three-prong test: "(1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher." Herman, 480 N.J. Super. at 492 (quoting DeAngelis, 180 N.J. at 12-13). "A defamatory statement, generally, is one that subjects an individual to contempt or ridicule, one that harms a person's reputation by lowering the community's estimation of him or by deterring others from wanting to associate or deal with him." Ibid. (quoting Durando v. Nutley Sun, 209 N.J. 235, 248-49 (2012)). In determining whether a statement is defamatory, courts consider the content, verifiability, and context of the statement. Ward v. Zelikovsky, 136 N.J. 516, 529 (1994). Courts "differentiate between defamatory statements and

statements of rhetorical hyperbole." Id. at 530. "'[L]oose, figurative or hyperbolic language' will be less likely to imply specific facts, and thus more likely to be deemed non-actionable as rhetorical hyperbole or a vigorous epithet." Id. at 532 (quoting Milkovich v. Lorain J. Co., 497 U.S. 1, 17, 21 (1990)). Statements of opinion, not facts, are not actionable defamation claims and "[o]pinion statements reflect a state of mind." Lynch v. N.J. Educ. Ass'n, 161 N.J. 152, 167 (1999). They, "like unverifiable statements of fact, generally cannot be proved true or false." Ibid. Opinions "do not trigger liability unless they imply false underlying objective facts." Ibid. (citing Restatement (Second) of Torts, § 566 (1977)).

Where false statements are made regarding matters of public concern or about a public figure, the plaintiff must demonstrate that they were made with actual malice. See Herman, 480 N.J. Super. at 492. "To satisfy the actual-malice standard, a plaintiff must show by clear and convincing evidence that the publisher either knew that the statement was false or published with reckless disregard for the truth." Lynch, 161 N.J. at 165. "The [actual malice] test is subjective, not objective, and involves analyzing the thought processes of the particular defendant." Durando, 209 N.J. at 251. Actual malice occurs where "the publisher fabricates a story, publishes one that is wholly unbelievable, or

relies on an informant of dubious veracity . . . or purposely avoids the truth."

Neuwirth, 476 N.J. Super. at 392 (internal citations omitted) (quoting Lynch, 161 N.J. at 165-66).

In Senna, our Supreme Court fashioned a test for when speech "involves a matter of public concern," thereby triggering "the actual-malice standard." 196 N.J. at 496-97. The Court articulated that in "media and non-media cases,"

> to determine whether speech involves a matter of public concern or interest that will trigger the actual-malice standard, a court should consider the content, form, and context of the speech . . . . Content requires that we look at the nature and importance of the speech . . . . For instance, does the speech in question promote self-government or advance the public's vital interests, or does it predominantly relate to the economic interests of the speaker? Context requires that we look at the identity of the speaker, his ability to exercise due care, and the identity of the targeted audience.

> [Id. at 497 (internal citation omitted).]

The Court concluded that the defendant's accusations of fraud were intended to drive business away from plaintiff and were not a matter of public concern or interest. Id. at 498. Simply put, speech regarding a private dispute, made solely for the benefit of the speaker, would not be considered speech of "public concern." W.J.A. v. D.A., 210 N.J. 229, 245-46 (2012).

18

With these defamation principles guiding our analysis of the parties' and amici's arguments, we conclude that dismissal of Lento Law's complaint for failure to state a claim upon which relief may be granted was appropriate because Hendrickson's BBB post was not defamatory. Lento Law did not satisfy the first of the three-part defamatory test that Hendrickson's post was false and defamatory. See Herman, 480 N.J. Super. at 492.

Moreover, opinion statements "are generally not capable of proof of truth or falsity because they reflect a person's state of mind," and therefore "receive[] substantial protection under the law." Zelikovsky, 136 N.J. at 531. Actionable defamation requires that the statement "suggest[] specific factual assertions that could be proven true or false." Ibid. Courts ascribe the "fair and natural meaning" to the statement to determine whether a reasonable person would interpret defamatory meaning. Id. at 529 (quoting Romaine v. Kallinger, 109 N.J. 282, 290 (1988)).

Hendrickson's "[l]oose, figurative, [and] hyperbolic language" is not actionable defamation, as it reflects her opinion and lacks specific factual content. Id. at 532. Her comment that Lento Law is a "[t]otal rip off" is pure hyperbolic, unverifiable opinion as are her other remarks, "[y]ou can get a lawyer that will settle with the other party for a lot cheaper!" and "if you are

tight on money and know you will be settling go with a firm that does not take a full retainer and tell you to kick rocks afterwards." Interestingly, the statement that Lento Law are "[p]robably good lawyers," which is also a purely hyperbolic and unverifiable opinion, precedes that later remark. Her statement that "[e]very other law firm takes the full retainer" but returns what "is not used" is part hyperbole, part factual assertion.

Significantly, the context of her post reflects her dissatisfaction with the law firm's policy of non-refundable retainers, as she hoped the law firm would return a portion of the retainer given that little time was spent on resolving her matter. Hendrickson's statement that "[h]ad I known this was how this firm operates" is an unverifiable opinion, reflecting her belief that, if she knew the law firm would not return some of the retainer for the little time it spent on her matter, she might not have hired the law firm. And while Hendrickson did not mention her non-refundable retainer agreement with Lento Law, she did not accuse them of any illegal conduct, such as fraud. Regardless of whether Lento Law had the contractual right to keep her full retainer, Hendrickson had the right to publicly share her opinion on the BBB website, a social media outlet for such expression. Her comments were not solely for her benefit, but to make the public aware of her opinion that Lento Law's business practice was to keep a

20

client's substantial retainer despite expending a minimal amount of time in representing the client. Accordingly, her social media post is protected speech under UPEPA.

Because we hold that Hendrickson's post was not defamatory, we need not address whether it constituted actual malice, the third prong of a defamatory statement. However, we briefly do so for the sake of completeness.

Hendrickson is correct that Lento Law's complaint is devoid of the words "actual malice." Notwithstanding, Lento Law cannot meet this "high standard," as it does not assert with particularity any factual allegations that Hendrickson knew her statements were false, or entertained serious doubts about their veracity, and then published them anyway. Neuwirth, 476 N.J. Super. at 391. In its brief, the law firm avers "[Hendrickson's] post was made with actual malice. She knew it was false[] but nonetheless posted a lie." Lento Law's argument that actual malice is established because Hendrickson signed the retainer agreement is unavailing. Again, the only person who can attest to the veracity of Hendrickson's "[h]ad I known" statement is Hendrickson herself. She never stated that she did not know the retainer was non-refundable. It is entirely possible she understood the words of the agreement but still assumed the law firm, would—or should—under the situation that unfolded, refund some

21

of her retainer. As such, Lento Law has not alleged Hendrickson's comments were made with actual malice.

Accordingly, we agree with the motion judge that Lento Law's complaint alleging defamation should be dismissed with prejudice under UPEPA because it failed to state a claim upon which relief can be granted.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division